CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Michael Traison, Esq.

Attorneys for Montauk Cliffs, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
MONTAUK CLIFFS, LLC,                                          :    Case No. 22-70312 (REG)
                                                              :
                                                              :
                          Debtor.                             :
                                                              :
------------------------------------------------------------- x

**AMENDED CHAPTER 11 PLAN OF LIQUIDATION**

DATED AS OF ~~MARCH 18~~APRIL 19, 2022

**TABLE OF CONTENTS**

Page

ARTICLE I          DEFINITIONS ................................................................1

ARTICLE II         SUMMARY OF PLAN .................................................9

ARTICLE III        TREATMENT OF ADMINISTRATIVE CLAIMS, UNITED STATES TRUSTEE FEES, FEE CLAIMS AND FEE   PRIORITY TAX CLAIMS ..................................................13

ARTICLE IV         CLASSIFICATION OF CLAIMS ................................15

ARTICLE V          TREATMENT OF CLAIMS .......................................15

ARTICLE VI         ACCEPTANCE OR REJECTION OF PLAN ................17

ARTICLE VII        IMPLEMENTATION OF THE PLAN ........................18

ARTICLE VIII       CLAIM OBJECTIONS AND DISTRIBUTIONS .........19

ARTICLE IX         EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................23

ARTICLE X          EFFECT OF THE PLAN ON CLAIMS ......................25

ARTICLE XI         CONDITIONS TO CONFIRMATION AND CONSUMMATION ..............28

ARTICLE XII        RETENTION OF JURISDICTION .............................28

ARTICLE XIII       ADMINISTRATIVE PROVISIONS ..........................30

22373.2000 20289863v3

Montauk Cliffs, LLC (the "Debtor") hereby proposes the following Amended Chapter 11 Plan of Liquidation (the "Plan") in connection with its chapter 11 case.

Reference is made to the Amended Disclosure Statement, dated March 18April 19, 2022 (the "Disclosure Statement"), for a discussion of the Debtor's assets and liabilities, the administration of the Debtor's case and for a summary and analysis of the Plan.

All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan. Documents referenced in the Plan and/or the Disclosure Statement are also available for review.

## ARTICLE I - DEFINITIONS

The capitalized terms used herein shall have the meanings set forth below. Terms used herein and not otherwise defined shall have the meanings given to them in the Bankruptcy Code or the Bankruptcy Rules unless the context requires otherwise.

**1.1.    363 Motion** means the Debtor's motion pursuant to section 363 of the Bankruptcy Code for approval of the Sale of the Property free and clear of all liens, claims and encumbrances.

**1.2.    Administrative Bar Date** means the date which shall be thirty (30) days after the Confirmation Date, by which proofs of claim or applications for payment of Administrative Claims arising from the Petition Date and through the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.11 of this Plan.

**1.3.    Administrative Claim** means a Claim for a cost or expense of administration of the Chapter 11 Case, other than a Fee Claim, allowable under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(1) of the Bankruptcy Code, including the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Estate.

**1.4.**     **Allowed** means, with respect to any Claim, a Claim, subject to Section 8.1 of the Plan, (i) which is scheduled as undisputed, noncontingent and liquidated in the Schedules, or any amendment to the Schedules, and as to which no proof of Claim has been timely filed; (ii) as to which a proof of Claim has been timely filed in a liquidated, non-contingent amount and either (a) no objection thereto has been timely filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Court; (iii) which has been expressly allowed under the provisions of this Plan; or (iv) which is an Administrative Claim to which no objection has been asserted, or which has been approved by Final Order of the Court.  An Allowed Claim: (x) includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires; and (y) shall be net of any valid setoff or recoupment amount against such Claim based on a valid offset or recoupment right of the Debtor, which valid setoff or recoupment amount shall be deemed to have been setoff or recouped in accordance with the provisions of this Plan.  Unless otherwise specified herein or by order of the Court, Allowed Claims shall not, for any purpose under the Plan, include interest on such Claims on or after the Petition Date.

**1.5.**     **Ballot** means the ballot distributed to each eligible claimant by the Balloting Agent, on which ballot such claimant may, inter alia, vote for or against the Plan.

**1.6.**     **Ballot Deadline** means the date and time set by the Court by which the Balloting Agent must receive all Ballots.

**1.7.**     **Balloting Agent** means Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York, NY  11530.

**1.8.**     **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

**1.9.    Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and any applicable local rules of the Court as now in effect or hereafter amended.

**1.10.    Bar Date** means April 18, 2022, the date established by order of the Court dated March 4, 2022 as the last date by which proofs of Claim arising prior to the Petition Date must have been filed with the Court.

**1.11.    Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.12.    Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

**1.13.    Chapter 11 Case** means the chapter 11 case of the Debtor pending before the Court.

**1.14.    Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.15.    Claimant** means the holder of a Claim.

**1.16.    Class** means a group of Claims as described in Articles III and IV of the Plan.

**1.17.    Confirmation Date** means the date the Court enters the Confirmation Order on its docket.

**1.18.    Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

**1.19.    Confirmation Order** means the order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.20.**   **Court** means the United States Bankruptcy Court for the Eastern District of New York, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

**1.21.**   **Creditor Carve Out** means the lesser amount of (a) ten percent of the aggregate of Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed General Unsecured Claims, or (b) $50,000, from the proceeds of Sale to which the Lender is otherwise entitled, which amount will be distributed to the Debtor to be used to pay holders of such Allowed Claims on a *pro rata* basis up to the amount of Creditor Carve Out.

**1.22.**   **Debtor** means Montauk Cliffs, LLC.

**1.23.**   **Disallowed Claim** means a Claim or portion thereof that (i) has been disallowed by a Final Order of the Court; (ii) is identified in the Schedules in an amount of zero dollars or as contingent, unliquidated, or disputed and as to which a proof of Claim was not filed by the Bar Date; or (iii) is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date.

**1.24.**   **Disclosure Statement** means the Amended Disclosure Statement dated March 18April 19, 2022 that relates to this Plan and which is approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.25.**   **Disclosure Statement Order** means the order of the Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.26.**   **Disputed Claim** means any Claim or any portion thereof which has not become Allowed, which is not a Disallowed Claim, or against which an objection to the allowance thereof

4

has heretofore been or is hereafter interposed and which has not been allowed by Final Order; provided, however, that nothing in this definition of "Disputed Claim" is intended to or does impair the rights of any holder of a Disputed Claim to pursue its rights under section 502(c) of the Bankruptcy Code.  Without limiting any of the foregoing, but subject to the provisions of this Plan, a Claim that is or becomes the subject of an application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim, shall be deemed to constitute a Disputed Claim.

**1.27.   Distribution** means the distribution to be made to holders of Allowed Claims pursuant to the Plan.

**1.28.   Distribution Address** means the address set forth in the relevant proof of Claim. If no proof of Claim is filed in respect to a particular Claim, such defined term means the address set forth in the Debtor's Schedules.

**1.29.   Distribution Date** means the later of (a) ten (10) days after the closing of the Sale, or (b) ten (10) days after all Disputed Claims become Allowed Claims, provided however that the Distribution Date may occur after the closing of the Sale but before such time as all Disputed Claims become Allowed Claims, as long as there is established a reserve consisting of the full amount of all Disputed Claims, from which such Disputed Claims shall be paid if and to the extent they become Allowed Claims.

**1.30.   Effective Date** means the first Business Day after the date each of the conditions set forth in Section 11.1 hereof has been satisfied.

**1.31.   Estate** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.32.    Estate Causes of Action** means the actions commenced or to be commenced to recover monies for the Estate under Chapter 5 of the Bankruptcy Code, or any actions or proceedings commenced or to be commenced for the benefit of the Estate.

**1.33.    Equity Interest** means an equity interest, within the meaning of section 101(16) of the Bankruptcy Code, in the Debtor.

**1.34.    Excess Debtor Proceeds** shall have the meaning ascribed in Article II of the Plan.

**1.35.    Fee Claim** means a Claim for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case.

**1.36.    Fee Claims Bar Date** means a date which shall be thirty (30) days after the Confirmation Date, by which date all applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court.

**1.37.    Final Order** means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which:  (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Court, could be filed with respect to such order shall not cause such order not to be a Final Order.

6

1.38.   **General Unsecured Claim** means any Claim that is not an Administrative Claim, Fee Claim, Priority Non-Tax Claim, Priority Tax Claim, Secured Real Estate Tax Claim, Lender Secured Claim or Equity Interest.

1.39.   **Guarantors** means, individually or collectively, Eli Wilner, Barbara Brennan, Mangos Investors, LLLP and Mangos Holdings, LLC.

~~1.39.~~1.40.     **Lender** means Case Montauk, LLC, a creditor holding a secured claim against the Property.

~~1.40.~~1.41.     **Lender Secured Claim** means the claim of the Lender in the amount of not less than $35,000,476.96 as of the Petition Date, secured by a first priority mortgage against the Property; provided that, in the event that the gross Sale proceeds are in excess of $35,000,476.96, Lender reserves the right to seek additional post-petition interest and attorneys' fees, and the Debtor reserves the right to object to such additional post-petition interest and attorneys' fees.

~~1.41.~~1.42.     **Person** means any individual, corporation, partnership, association, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, interest holders, holders of Claims, current or former employees of the Debtor, or any other entity.

~~1.42.~~1.43.     **Petition Date** means February 23, 2022.

~~1.43.~~1.44.     **Plan** means this Amended Chapter 11 Plan, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as may be filed hereafter in accordance with the terms of the Plan, the Bankruptcy Code and other applicable law.

~~1.44.~~1.45.     **Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, Fee Claim, and Priority Tax Claim.

1.45.1.46.    **Priority Tax Claim** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, other than a Secured Real Estate Tax Claim.

1.46.1.47.    **Professional Fee Carve Out** means the amount of $150,000 from the proceeds of the Sale to which the Lender is otherwise entitled, which amount will be distributed to the Debtor to be used to pay up to $150,000 to the holders of Allowed Fee Claims (other than the real estate broker's Claim for its commission).

1.47.1.48.    **Property** means the real property owned by the Debtor and located at 38-42 Old Montauk Highway, Montauk, New York 11954.

1.48.1.49.    **Sale** means the sale of the Property free and clear of all liens, claims and encumbrances pursuant to the terms of this Plan and the 363 Motion.

1.49.1.50.    **Sale Expenses** mean the following costs and expenses associated with the Sale:  brokers' commissions, auctioneers' costs, necessary and customary closing costs and United States Trustee Fees due under the Plan.  Sale Expenses shall not include any Secured Real Estate Tax Claim which shall be paid from the net proceeds of Sale, or transfer taxes, including, without limitation, any "mansion tax", which are exempt from payment under section 1146 of the Bankruptcy Code.

1.50.1.51.    **Schedules** means the Debtor's schedules of assets and liabilities filed with the Court pursuant to sections 521(a)(1) and 1106(a)(2) of the Bankruptcy Code, as the same may have been, or may hereafter be, amended.

1.51.1.52.    **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in

property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.   The defined term Secured Claim includes any Claim that is: (i) subject to an offset right and the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

1.52.**1.53.**    **Secured Real Estate Tax Claim** means a Claim for real estate taxes due and owing in connection with the Property that is secured by a lien against the Property.

1.53.**1.54.**    **Unclaimed Property** means any Cash unclaimed after ninety (90) days following the Distribution Date as provided in Section 8.4 of this Plan.  Unclaimed Property shall include:  (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts to locate such address which were reasonable under the circumstances as provided for in the Plan.

1.54.**1.55.**    **United States Trustee** means the Office of the United States Trustee for the Eastern District of New York.

1.55.**1.56.**    **United States Trustee Fees** means fees payable pursuant to the applicable schedule pursuant to 28 U.S.C. § 1930(a)(6) and any interest thereon pursuant to 31 U.S.C. § 3717.

## ARTICLE II - SUMMARY OF PLAN

The Plan is premised upon a Sale of the Property free and clear of all liens, claims and encumbrances.  The Debtor, through a broker to be retained in the Chapter 11 Case, shall market the Property for six (6) months from entry of the order authorizing the broker's retention until the broker issues a call for offers.  The Debtor, in consultation with the Lender, has selected Hedgerow Exclusive Properties ("Hedgerow") as the broker to market the Property.  Hedgerow will develop

22373.2000 20289863v3

a marketing plan and work towards execution of a contract with a purchaser for the highest price possible. ~~Not later than the conclusion of the six (6) month marketing period, the Debtor shall file the 363 motion~~Hedgerow shall make a call for offers between the dates of June 30, 2022 and July 31, 2022, the precise date which shall be determined by Hedgerow based upon Hedgerow's professional judgment and pursuant to a marketing plan approved by the Debtor and the Lender. The period from the date on which an Order is entered approving the retention of Hedgerow and the date on which the foregoing call for offers is made by Hedgerow shall be referred to as the "Marketing Period." At the conclusion of the Marketing Period, the Debtor shall file the 363 Motion seeking entry of an order authorizing the sale of the Property free and clear of all liens, claims and encumbrances as further discussed herein. If no contract satisfactory to the Lender is executed within ~~such six (6) month marketing period~~the Marketing Period (or such additional time as is agreed to by the Lender in its sole and absolute discretion), the Sale Motion shall seek an order approving ~~a~~ Sale to the Lender or its designee by credit bid~~.~~, which sale shall close on or before the 30th day following the call for offers.

The Sale Expenses will be paid from the proceeds of the Sale. Any Allowed Secured Real Estate Tax Claims shall also be paid at the closing of the Sale. Pursuant to section 1146(a) of the Bankruptcy Code, the Sale of the Property shall not be subject to any stamp, transfer or similar tax. The remaining proceeds of the Sale, if any, shall be paid as follows:

(a)    In the event of a Sale in an amount of $28,000,000 or less (net of all Sale Expenses and the Secured Real Estate Tax Claims), title to the Property shall be transferred to the Lender or its designee by way of credit bid or to the actual Cash bidder in the sole and absolute discretion of the Lender. In the event that the Property shall be transferred to the Lender or its designee by way of credit bid, the current occupants of the Property, including,

> **Formatted:** outline1 ds-tnr12pt 4, Left, Outline numbered + Level: 4 + Numbering Style: a, b, c, … + Start at: 1 + Alignment: Left + Aligned at:  1" + Indent at:  0"

10

without limitation, Eli Wilner, shall vacate the Property ~~within thirty (30) days of closing of the Sale.~~ no later than thirty (30) days following the conclusion of the Marketing Period (the "Deadline to Vacate"); provided however that should the Marketing Period end through a call for offers prior to July 15, 2022, and Lender or its designee is the successful bidder by way of credit bid, then in no event shall the Deadline to Vacate occur prior to August 15, 2022.

(b)     In the event that the Lender takes title to the Property by credit bid, the Lender shall pay to the Estate, at closing on the Sale of the Property, the Professional Fee Carve Out and the Creditor Carve Out and shall pay all Sale Expenses and the Secured Real Estate Tax Claims or, in the alternative to paying the Secured Real Estate Tax Claims, take title to the Property subject to such Secured Real Estate Tax Claims.  Any funds paid to the Estate pursuant to this paragraph (b) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel until such time as the Claims to be paid from such carveouts have been Allowed.  Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

(c)     In the event that the Property is sold for Cash and the Sale proceeds, net of Sale Expenses and the Secured Real Estate Tax Claims, are greater than $28,000,000 and less than or equal to $34,000,000, at closing (i) Lender shall receive (x) $28,000,000 (less the amount of the Professional Fee Carve Out and the Creditor Carve Out, which will be retained by the Estate for distribution to holders of Allowed Fee Claims and Claimants entitled to receive distribution from the Creditor Carve Out on account of their Allowed Claims), as well as (y) 80% of amounts above $28,000,000 net of Sale Expenses and the Secured Real Estate Tax Claims and (ii) the Debtor shall receive the remaining Sale proceeds.  For the avoidance of doubt, it is the intention that the Debtor receive the full amount of the Professional Fee Carve Out and Creditor Carve Out from the Lender.  Any funds retained by the Estate pursuant to this

22373.2000 20289863v3

paragraph (c) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel until such time as the Claims to be paid from such carveouts have been Allowed. Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

(d)    ~~-~~In the event that the Property is sold for Cash and the Sale proceeds net of Sale Expenses and the Secured Real Estate Tax Claims are greater than $34,000,000, in addition to the amounts set forth in paragraph (c) above, Lender shall also receive 70% of amounts above $34,000,000 and the Debtor shall receive the remaining Sale proceeds. In the event that the net Sale Proceeds are in excess of the amount necessary to satisfy the Lender Secured Claim and the Secured Real Estate Tax Claims, such excess shall be paid in full to the Debtor.

(e)    In the event that the Property shall be transferred to an entity other than the Lender or its designee by way of credit bid, all current occupants of the Property, including Eli Wilner, shall vacate the Property ~~at~~on or before the ~~closing of the Sale~~Deadline to Vacate, or ~~at~~ such ~~later date~~other period as ~~may be~~ determined by and agreed to by ~~the occupants and the~~such third-party buyer (i.e., a purchaser~~.~~ other than the Lender or its designee).

(f)    The Professional Fee Carve Out shall be distributed $150,000 *pro rata* to holders of Allowed Fee Claims until paid in full. The Creditor Carve Out shall be distributed *pro rata* to holders of Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed General Unsecured Claims, in that order, until paid in full. For avoidance of doubt, the Allowed fees and expenses of a Court-retained broker shall be paid from the Sale proceeds and not from the Professional Fee Carve Out or the Creditor Carve Out.

(g)    Any Sale proceeds received by the Debtor in excess of the Professional Fee Carve Out and the Creditor Carve Out (the "Excess Debtor Proceeds"), shall be distributed

in the order of priority set forth in the Bankruptcy Code: to wit, *pro rata* to holders of Allowed

Fee Claims until paid in full; thereafter, *pro rata* to holders of Allowed Priority Non-Tax Claims

until paid in full; thereafter, *pro rata* to holders of Allowed Priority Tax Claims until paid in full;

thereafter, *pro rata* to holders of Allowed General Unsecured Claims until paid in full; and

finally, any remaining proceeds shall be paid to the holders of Equity Interests in the Debtor.

The Plan divides Claim holders into five (5) separate Classes, four (4) of which may be

impaired.  There are also four (4) unclassified categories of Claims – Administrative Claims,

United States Trustee Fees, Fee Claims and Priority Tax Claims.

### ARTICLE III - TREATMENT OF ADMINISTRATIVE CLAIMS, UNITED STATES TRUSTEE FEES, FEE CLAIMS AND PRIORITY TAX CLAIMS

Administrative Claims, United States Trustee Fees, Fee Claims and Priority Tax Claims

have not been classified and are excluded from the Classes set forth in Article IV.

**3.1.    Administrative Claims.**  Administrative Claims other than Fee Claims shall be

paid by the Debtor's Manager, Eli Wilner, in the ordinary course. To the extent any such

Administrative Claims remain unpaid as of the Distribution Date, Eli Wilner shall pay, from his

own funds, to each holder of an Allowed Administrative Claim 100% of the Allowed amount of

such Administrative Claim on or as soon as reasonably practicable after the Distribution Date or

upon such other less favorable terms as may be agreed upon by such holder and the Debtor.

**3.2.    Bar Date for Administrative Claims.  Proofs of claim or applications for payment of Administrative Claims (other than Fee Claims) arising from the Petition Date through the Confirmation Date must be filed with the Court, with copies to the parties listed in Section 13.11 of this Plan on or before the Administrative Bar Date. Any Person that fails to file such a proof of Claim or application with the Court within that time shall be forever barred from asserting such an Administrative Claim including without limitation, against**

**the Debtor, the Estate, or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Claim.**

**3.3.    United States Trustee Fees.** All statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any applicable interest thereon shall be paid in full at the closing of the Sale as part of the Sale Expenses. Thereafter, such fees and any applicable interest thereon shall be paid by the Debtor or Eli Wilner in accordance with the applicable schedule for payment of such fees until the entry of a final decree or the case is dismissed or converted.

**3.4.    Fee Claims.** Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive up to 100% of the Allowed amount of such Claim, on or as soon as reasonably practicable after the Distribution Date *pro rata* from the Professional Fee Carve Out and the Excess Debtor Proceeds up to the full amount of their Claims or receive such other less favorable treatment as may be agreed by such holder and the Debtor.

**3.5.    Bar Date for Fee Claims.  All applications for payment of Fee Claims for services rendered through the Confirmation Date must be filed with the Court with copies to the parties listed in Section 13.11, on or before the Fee Claims Bar Date.  Any Person or entity that fails to file such application on or before such date shall be forever barred from asserting such a Fee Claim against the Debtor, the Estate, or their property, and the holder thereof shall be permanently enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Fee Claim.**

**3.6.    Priority Tax Claims.** The holder of an Allowed Priority Tax Claim shall receive 100% of the Allowed amount of such Claim, on or as soon as reasonably practicable after the Distribution Date from the Creditor Carve Out and the Excess Debtor Proceeds or shall receive such other less favorable treatment as may be agreed by such holder and the Debtor.

14

### ARTICLE IV - CLASSIFICATION OF CLAIMS

The following table designates the Classes of Claims and specifies which of those Classes are (i) impaired or unimpaired by this Plan, and (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject this Plan.

**4.1.    Classes**

|         | Class | Status | Voting Rights |
|---------|-------|--------|---------------|
| Class 1 | Priority Non-Tax Claims | May Be Impaired | Yes |
| Class 2 | Lender Secured Claim | May Be Impaired | Yes |
| Class 3 | Secured Real Estate Tax Claims | Unimpaired | No |
| Class 4 | General Unsecured Claims | May Be Impaired | Yes |
| Class 5 | Equity Interests | May Be Impaired | Yes |

**4.2.    General Rules of Classification.**  Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim has not been paid, released or otherwise satisfied and qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes.  For voting and distribution purposes, a holder of more than one Claim in a Class shall be deemed to have a single Claim in such Class.

### ARTICLE V - TREATMENT OF CLAIMS

**5.1.    Priority Non-Tax Claims (Class 1)**.  The Debtor is unaware of any Priority Non-Tax Claims.  In the event that such a Claim is filed and becomes Allowed, the holder of an Allowed Priority Non-Tax Claim shall be paid on or as soon as reasonably practicable after the Distribution Date *pro rata* from the Creditor Carve Out and the Excess Debtor Proceeds up to the full amount of their Claims.  The holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

**5.2.    Lender Secured Claim (Class 2).** As set forth in Article II above, in full satisfaction of the Lender Secured Claim, the Lender shall receive either (a) title to the Property if

the net proceeds of the Sale after payment of Sale Expenses and the Secured Real Estate Taxes are less than $28,000,000; or (b) (i) 80% of each dollar of Sale proceeds after payment of Sale Expenses and the Secured Real Estate Taxes in excess of $28,000,000 but less than or equal to $34,000,000 plus (ii) 70% of each dollar of Sale proceeds after payment of Sale Expenses and the Secured Real Estate Taxes in excess of $34,000,000, up to the full amount of the Lender Secured Claim. From the proceeds to which the Lender is otherwise entitled, the Lender shall pay the Professional Fee Carve Out and the Creditor Carve Out to the Debtor for payments under the Plan. Any deficiency in payment of the Lender Secured Claim shall be waived and released by the Lender as against the Debtor and, except as set forth in Section 7.3 hereof, the ~~guarantors~~Guarantors of the debt.  Upon receipt of the Distribution to which the Lender is entitled, the Lender's lien against the Property shall be released and satisfied.  The Lender has agreed to its treatment under this Plan and will vote in favor of the Plan.

**5.3.    Secured Real Estate Tax Claims (Class 3)**.  Class 3 under the Plan consists of Secured Real Estate Tax Claims.  Secured Real Estate Tax Claims shall be paid in full at the Closing from the proceeds of Sale or by the Lender in the event that the Lender receives title to the Property pursuant to section 5.2(a) of the Plan, unless the Lender elects to take title to the Property subject to such Secured Real Estate Tax Claims. In the event such Claims are not Allowed at the Closing, the full amount of such Claims shall be escrowed pending allowance and shall be paid as soon as reasonably practicable after Allowance of such Claims with any disallowed portion of such Claims being returned within five (5) business days of such Claim becoming a Disallowed Claim in whole or in part (a) to the Lender, if the Lender Secured Claim has not been paid in full or (b) to the Estate, if the Lender Secured Claim has been paid in full.  Upon receipt of the

Distribution to which a holder of Claims in this Class is entitled, such Claimant's lien against the Property shall be deemed released and satisfied.

**5.4.    General Unsecured Claims (Class 4)**.  Class 4 consists of any Claim that is not an Administrative Claim, Fee Claim, Priority Tax Claim, Secured Real Estate Tax Claim, Lender Secured Claim, Priority Non-Tax Claim, or an Equity Interest. Each holder of a General Unsecured Claim shall be paid *pro rata* from the Creditor Carve Out and *pro rata* from the Excess Debtor Proceeds, up to the full amount of their Claims.

**5.5.    Equity Interests (Class 5)**.  Class 5 includes the holders of Equity Interests in the Debtor.  Such holders shall receive any remaining proceeds of Sale after payment of all Allowed Claims.

### ARTICLE VI - ACCEPTANCE OR REJECTION OF PLAN

**6.1.    Voting of Claims.**  Each Claimant in Classes 1, 2, 4 and 5 shall be entitled to vote to accept or reject this Plan.

**6.2.    Acceptance by a Class.**  Consistent with section 1126(c) of the Bankruptcy Code and except as provided for in section 1126(e) of the Bankruptcy Code, a Class of Claims shall have accepted this Plan if it is accepted by at least two-thirds in dollar amount, and more than one-half in number of the holders, of Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**6.3.    Presumed Acceptance of Plan.**  Pursuant to section 1126(f) of the Bankruptcy Code, any Class that is unimpaired under a plan is conclusively presumed to accept a plan. Accordingly, Class 3 is unimpaired and conclusively presumed to accept the Plan.

**6.4.    Presumed Rejection of Plan.**  In accordance with section 1126(g) of the Bankruptcy Code, any Class that is to receive no distribution under a plan is conclusively presumed to reject a plan.  No Class is conclusively presumed to reject this Plan.

**ARTICLE VII - IMPLEMENTATION OF THE PLAN**

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of the Plan.

**7.1.    Funding of the Plan.**

(a)    **Source of Distributions.**  The funds for the Distribution will be derived from the proceeds of the Sale after payment of the Sale Expenses or, in the event of a credit bid, from the Lender.

(b)    **Maintenance of Distribution Fund**.  To the extent that the Distribution to all Allowed Claimants, other than Distributions to Lender, which shall be paid at closing of the Sale, is not made in whole or in part at the closing of the Sale, the proceeds of the Sale net of Sale Expenses and any Distributions made at the closing shall be held in escrow by counsel for the Debtor for further Distribution.

**7.2.    Exemption from Certain Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, "[t]he issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax."  The closing on the Sale of the Property will be on or after the Confirmation Date and, therefore, the Sale shall not be taxed under any law imposing a stamp or similar tax as provided for in section 1146(a) of the Bankruptcy Code.

**7.3    Estate Causes of Action**.  No Estate Causes of Action exist for the Estate other than the Estate's claim or potential claim against the Lender in the action entitled *Case Montauk, LLC v. Montauk Cliffs LLC, et al.* pending in the Supreme Court for the State of New York, Suffolk County, Index No. 615375/2018 (the "Foreclosure Action").  As consideration for the terms of this Plan, as soon as practicable following the Effective Date, the Lender, Debtor, ~~Eli Wilner, Barbara Brennan, Mangos Investors, LLLP, and Mangos Holdings, LLC~~and Guarantors shall discontinue

all actions with prejudice and all claims between the parties to the Foreclosure Action are settled, discontinued with prejudice, waived, and released~~.~~; provided, however, in the event the current occupants of the Property, including without limitation Eli Wilner, fail to vacate the Property by not later than the Deadline to Vacate, the Lender shall not be required to dismiss the Foreclosure Action as against Guarantors and Lender's claims against Guarantors shall survive.

**7.4.    Withdrawal of the Plan.**  The Debtor reserves the right to revoke and withdraw or to modify the Plan in accordance with Section 13.1 hereof at any time up to the Effective Date; provided, however, the Plan may not be modified without the written consent of Lender, which consent shall not unreasonably be withheld.

**7.5    Cramdown.**    The Debtor reserves the right to seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any Class voting against the Plan.

### ARTICLE VIII - CLAIM OBJECTIONS AND DISTRIBUTIONS

**8.1.    Objections to and Estimation of Claims.**  From and after the Effective Date, the Debtor shall have the right to object to the allowance of any Claim other than the Secured Lender Claim, which Claim is Allowed, and may file with the Court any appropriate motion with respect thereto within sixty (60) days of the Effective Date.  Such deadline may be extended by Order of the Court.

**8.2.    Claims Filed After Bar Date.**  Any Claim filed after the Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or

applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor.

**8.3.      Transmittal of Distributions and Notices.**

(a)      Any property or notice which a Person is or becomes entitled to receive pursuant to the Plan may be delivered by first class mail, postage prepaid, in an envelope addressed to that Person or authorized agent at the address indicated on the latest notice of appearance or the latest proof of claim or other paper filed by that Person or his authorized agent.  Absent any of the foregoing, the address set forth in the relevant Schedules for that Person may be used.  Property distributed in accordance with this Section shall be deemed delivered to such Person regardless of whether such property is actually received by that Person.  Notwithstanding anything in this Plan to the contrary, the Debtor shall not have any obligation to attempt to locate any Person who is or becomes entitled to receive any Distribution under the Plan with regard to any undeliverable or uncashed Distributions.

(b)      A holder of a Claim may designate a different address for notices and Distributions by notifying the Debtor of that address in writing.  Any change of address of a party entitled to receive Distributions hereunder must be provided by registered mail in order to be effective.  Such notification shall be effective upon receipt.

(c)      If any Distribution to a holder of a Claim is returned as undeliverable (e.g., "forwarding time expired, "addressee unknown", etc.), no further Distributions to such holder shall be made unless and until the Debtor is timely notified, in writing and within the time limits set forth in Section 8.4 of the Plan, of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.

20

**8.4.    Unclaimed Property.**  If any Distribution remains unclaimed for a period of ninety (90) days after the relevant Distribution Date to the holder of an Allowed Claim entitled thereto, the Distribution shall constitute Unclaimed Property and the holder shall no longer be entitled to such Distribution.   To the extent Lender's Allowed Claim has not been paid in full, all such property shall be remitted to Lender.

**8.5.    Withholding Taxes and Expenses of Distribution.**  Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.   All Persons holding Claims shall be required to provide any information necessary to affect the withholding of such taxes, and the Debtor shall be authorized to withhold Distribution on such Claims until the requisite information is received.   If such information is not received within ninety (90) days after the Distribution Date, the provisions of the immediately preceding Section 8.4 shall apply.

**8.6.    Disputed Payment.**  Notwithstanding anything to the contrary herein, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable Distribution is issued, the Debtor has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Debtor.   If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor, in lieu of making such Distribution to such Person, may reserve for such Distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

22373.2000 20289863v3

**8.7.    Setoffs and Recoupment.**    Except as otherwise provided in the Plan, the Confirmation Order or in agreements previously approved by Final Order of the Court, the Debtor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to affect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of this Plan shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder.  To the extent the Debtor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor.  The Debtor may seek periodic Court approval for any such setoffs or recoupments.

**8.8.    Miscellaneous Distribution Provisions.**

(a)    **Method of Cash Distributions.**    Any Cash payment to be made by the Debtor pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Debtor, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(b)    **Distributions on Non-Business Days.**    Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

(c)    **No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in

22

respect of such Claim any Distribution of a value in excess of the allowed amount of such Claim. Except as otherwise expressly provided herein, no Claim shall be allowed, nor Distribution made to the extent that it is for post-petition or post-Confirmation interest; <u>provided</u> <u>that</u>, in the event that the gross Sale proceeds are in excess of $35,000,476.96, Lender reserves the right to seek additional post-petition interest and attorneys' fees, and the Debtor reserves the right to object to such additional post-petition interest and attorneys' fees.

(d)     **Minimum Distributions.**  If a Distribution to be made to a given holder of an Allowed Claim would be $25.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder.  Any unclaimed Distributions shall be retained by the Debtor for Distribution pursuant to the terms of the Plan.

(e)     **Disposition of Excess Funds.**  If, after ninety (90) days following the completion of Distributions under the Plan, any Unclaimed Property remains, or Cash remains in the possession or under the control of the Debtor, and the Debtor has satisfied and discharged all Claims intended to be paid on behalf of the Estate, the Debtor shall distribute such remaining Cash or Unclaimed Property to the holders of Equity Interests; provided, however, to the extent Lender's Allowed Claim has not been paid in full, all such property shall be remitted to Lender.

### ARTICLE IX - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1.     Assumption or Rejection of Executory Contracts and Other Unexpired Leases.**
As of the Confirmation Date, but subject to the occurrence of the Effective Date, any prepetition executory contracts or unexpired leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) any executory contract or unexpired lease that is the subject of a separate motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease which shall have expired or terminated pursuant

23

to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such executory contracts or unexpired leases are in fact executory contracts or unexpired leases or that the Debtor had any liability thereunder.

**9.2.**    The Confirmation Order shall constitute an order of the Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date.  Notwithstanding anything in this Plan to the contrary, no executory contract or unexpired lease shall be deemed assumed or rejected pursuant to the terms of this Article IX if the Effective Date fails to occur for any reason.

**9.3.**    **Claims Relating to Rejected Pre-Petition Executory Contracts and Unexpired Leases.  Any Claim for damages arising by reason of the rejection of any pre-petition executory contract or unexpired lease hereunder must be filed on or before thirty (30) days following the Confirmation Date, and upon the failure of any entity to file such claim on or before such date, such entity shall be forever barred from asserting a claim on account of the rejection of such contract or unexpired lease, but shall nevertheless be bound by the provisions of the Plan.  Nothing in this Section 9.3 will extend any prior Bar Date set by prior order of the Court.**

There shall be no restriction on the rights of the Debtor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

There are no executory contracts or unexpired leases.  In the event, however, any Claims arising from the rejection of an executory contract or unexpired lease are filed and Allowed, the same will constitute a Class 4 General Unsecured Claim.

## ARTICLE X - EFFECT OF THE PLAN ON CLAIMS

**10.1.** **Surrender of Securities and Cancellation of Existing Securities and/or Related Agreements.**

(a) **Surrender of Securities.**  Each holder of any Claim against the Debtor shall, to the extent not already done and to the extent applicable, surrender to the Debtor any original note, instrument, certificate, certificated security or other item evidencing such Claim, and provide copies of any supporting agreement or other document.  No Distribution hereunder shall be made to or on behalf of any holder of a Claim unless and until such holder surrenders such items to the Debtor or demonstrates the non-availability of such items to the satisfaction of the Debtor, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtor harmless in respect of such instrument or other item described above and any Distributions made in respect thereof.  Any such holder that fails to surrender such items described above or satisfactorily explain their non-availability to the Debtor within ninety (90) days of the Distribution Date shall be deemed to have no further Claim against the Debtor, the Estate, or their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property.  Notwithstanding the immediately preceding sentence, any such holder of a Disputed Claim shall not be required to surrender such items until the time such Claim is Allowed or Disallowed.  Notwithstanding anything in this Section 10.1 to the contrary, Lender shall not be required to surrender to the Debtor any original note, instrument, certificate,

25

certificated security or other item evidencing the Lender Secured Claim until closing on the Sale of the Property.

        **10.2.**        **Injunction, Release, Discharge and Exculpation.**

        (a)        **Injunction.  Effective on the Confirmation Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor shall, with respect to any such Claims or Equity Interests, be permanently enjoined from (i) taking any action against, or interfering in any respect with, the property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan); (ii) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (iii) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.**

        (b)        **Release of the Debtor.  Effective as of the Effective Date, all holders of Claims and Interests shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against the Debtor based on any claim or cause of action against or concerning the Debtor, the Estate or the Property which arose prior to the Effective Date.**

        (c)        **Release by the Debtor.  In consideration for the agreements of the Lender contained in this Plan, the Debtor, its Estate and any person claiming through or on behalf of the Debtor or its Estate including Eli Wilner, Barbara Brennan, Mangos Investors, LLLP, Mangos Holdings, LLC, their successors and assigns shall be permanently enjoined from and after the Effective Date from commencing, conducting or continuing in any**

**manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against Lender based on any claim or cause of action against the Lender which arose prior to the Effective Date.**

        (d)     **Discharge. The Debtor is not entitled to, and will not receive, a discharge since the Plan is a liquidating plan.**

        (e)     **Exculpation.  To the extent permitted under section 1125(e) of the Bankruptcy Code, the Debtor, the Lender, all of their respective professionals, consultants, representatives, employees, officers, directors, managers and agents, and their successors and assigns, shall neither have, nor incur, any liability to any person or entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, including but not limited to the marketing of and sales process relating to the Sale, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; <u>provided</u> that the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; <u>provided</u>, <u>further</u>, that each of the foregoing Entities shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement.**

22373.2000 20289863v3

**Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any Entity with any of their respective obligations under the Plan or otherwise or to modify the effect or consequence of any such failure to comply with such obligations.**

## ARTICLE XI - CONDITIONS TO EFFECTIVE DATE AND CONSUMMATION

**11.1.  Conditions to Effective Date/Consummation.**  This Plan may not be consummated, and the Effective Date shall not occur, unless and until (a) the Confirmation Order shall have become a Final Order, and (b) the closing of the Sale has occurred.

## ARTICLE XII - RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Court shall retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)      To determine the allowability, classification, or priority of Claims upon objection by the Debtor or any other party in interest and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

(b)      To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

(c)      To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

(d)     To determine any and all applications for allowance of Fee Claims;

(e)     To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f)     To determine any dispute relating the Sale and confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

(g)     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(h)     To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to Part IX of the Plan;

(i)     To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case, including any remands;

(j)     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purpose;

(k)     To issue orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(l)     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(m)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(n)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(o)     To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

(p)     To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

(q)     To approve any Distributions, or objections thereto, under the Plan;

(r)     To approve any Claims settlement entered into or offset exercised;

(s)     To enter a Final Order or final decree closing the Chapter 11 Case; and

(t)     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

## ARTICLE XIII - ADMINISTRATIVE PROVISIONS

**13.1.     Amendments.**

(a)     **Pre-Confirmation Amendment.**     The Debtor reserves the right, in accordance with section 1127 of the Bankruptcy Code, to amend or modify the Plan provided the Court approves such modification, if required; provided, however, the Plan may not be modified without the written consent of Lender, which consent shall not unreasonably be withheld.

(b)     **Post-Confirmation Amendment Not Requiring Resolicitation.** After the entry of the Confirmation Order, the Plan may be modified to remedy any defect or omission or to

reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Court approval for such modification is obtained, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims under the Plan; and Lender has provided its consent to such modification, which consent shall not unreasonably be withheld.

(c)    **Post-Confirmation/Pre-consummation    Amendment    Requiring Resolicitation.**  After the Confirmation Date and before substantial consummation of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Lender has provided its consent to such modification; (iii) Debtor obtains Court approval for such modification, after notice and a hearing; (iv) such modification is accepted by at least two-thirds in amount of Allowed Claims in Classes entitled to vote upon the Plan; and (v) the Debtor complies with the provisions of the Bankruptcy Code, including section 1125 of the Bankruptcy Code, with respect to the Plan as modified.

**13.2.    Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**13.3.    Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflict of laws.

22373.2000 20289863v3

**13.4.    Courts of Competent Jurisdiction.**    If the Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**13.5.    Effectuating Documents and Further Transactions.**    The Debtor and its counsel shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as may be necessary or desirable to effectuate and further evidence the terms and conditions of the Plan including, without limitation, conveyance of title to the Property in connection with the Sale.

**13.6.    Cramdown.**    The Debtor reserves the right to request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code.

**13.7.    Confirmation Order and Plan Control.**    To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, or any other agreement, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any later order of the Court) controls the Plan.

**13.8.    Severability.**    In the event that the Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.    Notwithstanding any such holding, alteration or

interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.9.  Fractional Distribution.**  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar.

**13.10.    Rules of Construction.**

(a)    **Undefined Terms.**  Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b)    **Miscellaneous Rules.**  (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise; (ii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (iii) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date; (iv) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (v) whenever the Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after" such date.

**13.11.  Notices.**  All notices or requests in connection with the Plan shall be in writing and deemed to have been given five (5) Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission, addressed to:

>       Montauk Cliffs, LLC
>       Attn: Eli Wilner
>       42 Old Montauk Highway
>       Montauk, New York 11954
>
>       with a copy to:
>
>       Cullen and Dykman LLP
>       100 Quentin Roosevelt Boulevard
>       Garden City, NY 11530
>       (516) 357-3700
>       Matthew G. Roseman, Esq.
>       Bonnie L. Pollack, Esq.
>       Michael Traison, Esq.
>
>       and, if to Lender
>       Asset Management – A. Walker
>       405 Lexington Avenue
>       59th Floor
>       New York, NY  10174
>       Email:  awalker@arenaco.com
>
>
>       with a copy to:
>
>       Reed Smith LLP
>       599 Lexington Avenue, 24th Floor
>       New York, NY 10022
>       (212) 521-5400
>       Joseph Tuso, Esq.

**13.12.  Post-Confirmation Date Service List - Persons Entitled to Notice.**  From and after the Confirmation Date, any notices of appearance and demands for service of process filed by any Person with the Court prior to such date shall no longer be effective.  No further notices,

other than notice of entry of the Confirmation Order and notice of occurrence of the Effective Date, shall be required to be sent to such Persons unless such Persons file a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be filed with the Court and served upon the Persons listed in Section 13.11 of the Plan.

**13.13.  Notice of Entry of Confirmation Order and Occurrence of Effective Date.** Notice of Entry of the Confirmation Order and notice of occurrence of the Effective Date shall be sufficient if a copy of a notice indicating that said order has been entered by the Court, without attaching said order, is mailed to those Persons who had filed a notice of appearance and request for service of process in the Chapter 11 Case and to Persons appearing on the Post-Confirmation Date Service List.

**13.14.  Extension of Dates; Consent.**  To the extent any provision or definition of the Plan provides for an act or event to take place on a certain date, such date may be extended upon the written consent of the Debtor.  Any provision of the Plan which is conditioned upon, or subject to the consent of any party shall be deemed satisfied if the consent is executed by counsel for such party.

**13.15.  No Admissions.**  Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of a Claim's classification.

**13.16.  Post Confirmation Reports.** The Debtor shall be required to file post-confirmation quarterly reports until such time as a final decree is entered in the Debtor's case.

22373.2000 20289863v3

DATED:        ~~March 18~~April 19, 2022

MONTAUK CLIFFS, LLC

By:      */s/ Eli Wilner*
          Name: Eli Wilner
          Title: Manager


CULLEN AND DYKMAN LLP
Attorneys for the Debtor


By:*/s/ Bonnie Pollack*
          Matthew G. Roseman, Esq.
          Bonnie L. Pollack, Esq.
          Michael Traison, Esq.
          100 Quentin Roosevelt Boulevard
          Garden City, New York 11530
          (516) 357-3700