CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Michael Traison, Esq.

Attorneys for Montauk Cliffs, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                              :
In re:                                        :    Chapter 11
                                              :
MONTAUK CLIFFS, LLC,                          :    Case No. 22-70312 (REG)
                                              :
                                              :
                         Debtor.              :
                                              :
-----------------------------------------------------------------x

## SECOND AMENDED DISCLOSURE STATEMENT FOR
## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION

## IMPORTANT DATES

- Date by which Ballots must be received: _____, 2022 at 5:00 p.m. Eastern Time.

- Date by which objections to Confirmation of the Plan must be filed and served: _____, 2022 at 5:00 p.m. Eastern Time.

- Hearing on Confirmation of the Plan: _____, 2022 at __:00 _.m. Eastern Time.

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................................2
     A.     General ......................................................................................................................2
     B.     Voting .......................................................................................................................2
     C.     Confirmation Hearing ..............................................................................................4
     D.     Recommendations ....................................................................................................5

II. HISTORICAL INFORMATION ............................................................................................5
     A.     The Debtor's Pre-Petition Activity .........................................................................5

III. THE REORGANIZATION CASE .........................................................................................6
     A.     Overview ..................................................................................................................6
     B.     Employment of the Debtor's Professionals ............................................................7
     C.     Lender Secured Claim ..............................................................................................7
     D.     Claims Administration .............................................................................................7
     E.     Estate Causes of Action ...........................................................................................8
     F.     Exclusivity ...............................................................................................................9

IV. SUMMARY OF THE PLAN .................................................................................................9
     A.     General ......................................................................................................................9
     B.     Plan Overview/Property Sale ...................................................................................9
     C.     Treatment of Claims ..............................................................................................13
     D.     Treatment of Executory Contracts and Unexpired Leases ....................................18

V. MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION .........22
     A.     Funding of the Plan ................................................................................................22

22373.2000 20289864v4

B.    Injunction ...................................................................................................................22

C.    Release of the Debtor……………….…………………………………………....23

D.    Release by the Debtor …………………..…………………………………….…..23

E.    Discharge ...................................................................................................................24

F.    Exculpation ...............................................................................................................24

G.    Post-Confirmation Jurisdiction of the Court...........................................................25

VI. CONFIRMATION OF THE PLAN ......................................................................................27

A.    Introduction................................................................................................................27

B.    Conditions to Confirmation and Effective Date.......................................................28

C.    Voting Procedures and Standards ............................................................................28

D.    Acceptance .................................................................................................................31

E.    Confirmation and Consummation ...........................................................................32

VII. CERTAIN RISK FACTORS TO BE CONSIDERED...........................................................38

A.    Risk That Distributions Will Be Less Than Estimated ...........................................38

B.    Bankruptcy Risks ......................................................................................................39

VIII. TAX CONSEQUENCES....................................................................................................39

IX. CONCLUSION......................................................................................................................40

THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN, AND IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN, BUT TO AID AND SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN.  IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN.  ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO CAREFULLY READ THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT THE PLAN.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

22373.2000 20289864v4

## I.  INTRODUCTION

### A.      General

Montauk Cliffs, LLC (the "Debtor") files this Second Amended Disclosure Statement (the "Disclosure Statement") with respect to its Second Amended Chapter 11 Plan of Liquidation dated April 21, 2022 (the "Plan").

This Disclosure Statement is provided pursuant to section 1125 of the Bankruptcy Code to all the known creditors of the Debtor.  The purpose of this Disclosure Statement is to provide sufficient information to enable creditors who are entitled to vote to make an informed decision on whether to accept or reject the Plan.  Most words or phrases used in this Disclosure Statement shall have their usual and customary meanings.  Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan.    FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY.

**THE DEBTOR IS THE PROPONENT OF THE PLAN AND SUPPORTS CONFIRMATION OF THE PLAN.  IT URGES CREDITORS TO VOTE TO ACCEPT THE PLAN.**

### B.      Voting

With respect to Claims in Classes that are "impaired" (as defined below) under, but not deemed to have rejected, the Plan, each holder of a Claim in such Classes will receive a copy of this Disclosure Statement and the Plan, a Ballot for the acceptance or rejection of the Plan, and other related voting materials.  Any creditor whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."

2

Under the Plan, holders of Allowed Claims in Classes 1, 2, and 4, and Equity Interests in Class 5 may be impaired, and are therefore entitled to vote on the Plan (the "Voting Classes"). For a description of the Classes of Claims and their treatment under the Plan, see Section IV(C) below.

The date of entry of the Disclosure Statement Order is fixed as the "Voting Record Date." Only Persons who hold Claims on the Voting Record Date are entitled to receive a copy of this Disclosure Statement and all of the related materials. Only Persons who hold Claims on that date that are impaired under the Plan and are not deemed to reject or accept the Plan are entitled to vote on the Plan.

In voting on the Plan, please use only the Ballot sent to you with this Disclosure Statement. Please complete and sign your Ballot and return it in the enclosed pre-addressed envelope to the Balloting Agent:

> Cullen and Dykman LLP
> Attn: Bonnie L. Pollack, Esq.
> 100 Quentin Roosevelt Boulevard
> Garden City, NY 11530

ALL PROPERLY COMPLETED BALLOTS RECEIVED BY THE BALLOTING AGENT PRIOR TO _____, 2022 AT 5:00 P.M. EASTERN TIME (THE "VOTING DEADLINE") WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER EACH CLASS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN HAS ACCEPTED THE PLAN. <u>ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT. ANY BALLOTS RECEIVED BY FACSIMILE WILL NOT BE ACCEPTED UNLESS OTHERWISE ORDERED BY THE BANKRUPTCY COURT.</u> The Balloting Agent

will prepare and file with the Court a certification of the results of the balloting with respect to the Plan.

Your vote on the Plan is important. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired under a plan vote to accept such plan, unless the "cramdown" provisions of the Bankruptcy Code are employed. The Debtor reserves its right to seek to "cramdown" the Plan on non-accepting Classes of creditors. See Section VI below.

## C.    Confirmation Hearing

The Court will hold the Confirmation Hearing commencing at __:00 _.m. (Eastern Time), on _____, 2022 at the United States Bankruptcy Court for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York, New York 11722, before the Honorable Robert E. Grossman, United States Bankruptcy Judge. The Confirmation Hearing may be held telephonically or via Zoom for Government, and adjourned from time to time without further notice. At the Confirmation Hearing, the Court will (i) determine whether the requisite votes have been obtained from the Voting Classes, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, (iv) determine whether to confirm the Plan, and (v) grant such other and further relief as the Court deems reasonable and appropriate.

Any objection to confirmation of the Plan must be in writing and filed with the Court and served in a manner so as to be received on or before _____, 2022 at 5:00 p.m. Eastern Time by: (1) counsel to the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, Attn: Matthew G. Roseman, Esq. and Bonnie L. Pollack, Esq.;

4

and (2) the Office of the United States Trustee for the Eastern District of New York, 290 Federal Plaza, Central Islip, New York, New York 11722.

**D.     Recommendations**

**THE DEBTOR RECOMMENDS THAT ALL HOLDERS OF CLAIMS IN THE VOTING CLASSES VOTE TO ACCEPT THE PLAN.**

**II. HISTORICAL INFORMATION**

**A.     The Debtor's Pre-Petition Activity**

The Debtor is not an operating company. Rather, it is a real estate holding company which owns the real property located at 38-42 Old Montauk Highway, Montauk, New York, New York (the "Property").  Eli Wilner, Manager of the Debtor, resides in the Property.  The Debtor is wholly owned by Mangos Investors, LLLP, which in turn is owned by Mangos Holdings, LLC (1%) and Eli Wilner and Barbara Brennan (99%).The Lender holds a first priority mortgage against the Property. On August 6, 2018, the Lender commenced an action to foreclose the mortgage based on the Debtor's alleged defaults thereunder (the "Foreclosure Action").  The Foreclosure Action is entitled *Case Montauk, LLC v. Montauk Cliffs LLC, et al.* pending in the Supreme Court for the State of New York, Suffolk County, Index No. 615375/2018.  In addition to the Debtor, named as defendants the Guarantors of Debtor's obligations to Lender.  On January 5, 2021, the Supreme Court in the Foreclosure Action rendered a decision and order confirming the referee's report of the total amount due and owing to the Lender (the "January 2021 Decision") and issued a judgment of foreclosure and sale based thereon (the "January 2021 Judgment"). The Debtor filed appeals of both the January 2021 Decision and the January 2021 Judgment with the Appellate Division, Second Department (the "Appeals"). Although the time for perfecting the Appeals lapsed, the Debtor filed a motion to extend such time on October 22, 2021.

5

No decision on that motion has been rendered, and the Appeals are now stayed as a result of the bankruptcy filing.

In addition, on June 21, 2021, the Supreme Court rendered a decision (the "June 2021 Decision") which denied two (2) motions filed by the Debtor in the Foreclosure Action: (i) a motion to stay the foreclosure sale based on the COVID-19 moratoriums and (ii) a motion based on the "anti-clogging" doctrine seeking a stay of (x) a UCC sale of the ownership interests in the Debtor, (y) leave to assert counterclaims against the Lender based on violations of the "anti-clogging" doctrine, and (z) a vacatur of the January 2021 Judgment pending resolution of the counterclaims.  The June 2021 Decision was also appealed, and the time for perfecting that appeal was stayed as a result of the filing of the Debtor's bankruptcy case.  Prior to the Petition Date, two separate foreclosure sales were scheduled, each of which was cancelled as a result of Debtor's state court filings and orders resulting therefrom.

As a result, the Debtor's bankruptcy filing was necessitated on the Petition Date.

## III.  THE REORGANIZATION CASE

### A.      Overview

As of the Petition Date, all actions and proceedings against the Debtor and acts to obtain property from the Debtor were stayed under section 362 of the Bankruptcy Code.   During the administration of the Chapter 11 Case, the Debtor is managing the Property and its affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of the Court.

6

**B.      Employment of the Debtor's Professionals**

The Debtor has retained the law firm of Cullen and Dykman LLP as its counsel in connection with the Chapter 11 Case. Subject to the entry of an order, the Debtor intends to retain a real estate broker with respect to the Sale, further addressed below. The Debtor has not yet employed accountants.

**C.      Lender Secured Claim**

As set forth above, the Lender holds a mortgage against the Property, and has a Claim in the amount of not less than $35,000,476.96 as of the Petition Date.  Beginning prior to the Petition Date and continuing thereafter, the Lender and the Debtor negotiated a process by which the Property will be sold and provide a mechanism for the satisfaction of Claims in the case.  The agreement between the Lender and the Debtor, and to the extent applicable, the Debtor's Manager, Eli Wilner, form the basis for the Plan, and is further discussed in Part IV(B) below.

**D.      Claims Administration**

**1.      Filing of Schedules and Statements**

On March 2, 2022, the Debtor filed its Schedules.

**2.      Bar Date for Pre-Petition Claims**

By order dated March 8, 2022 the Court established April 18, 2022 as the last day by which proofs of claims arising prior to the Petition Date must have been filed with the Court, and August 22, 2022 for the last day by which governmental entities must file Claims.

**3.      Bar Date for Post-Petition Claims**

*Administrative Claims*

**Under the Plan, all holders of Administrative Claims arising from the Petition Date through the Confirmation Date (not including Fee Claims (described below)), and not paid prior to the Confirmation Date, must file with the Court proper requests for payment of**

7

such Administrative Claims, and serve copies upon the parties listed in Section 13.11 of the Plan, on or before the Administrative Bar Date. Parties not complying with this deadline shall be forever barred from seeking payment of those Claims including, without limitation, against the Debtor, the Estate, or their property, or commencing or continuing any action, employment of process or act to collect, offset or recover any such Administrative Claim. The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Administrative Bar Date.

*Fee Claims*

All parties requesting compensation or reimbursement of Fee Claims pursuant to section 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered or expenses incurred on behalf of the Debtor through the Confirmation Date must file applications with the Court, with copies to the parties listed in Section 13.11 of the Plan, on or before the Fee Claims Bar Date or shall be forever barred from seeking payment of those Fee Claims. The notice of Confirmation of the Plan to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will include notice of the Fee Claims Bar Date.

E.    Estate Causes of Action

No Estate Causes of Action exist for the Estate other than the Estate's claim or potential claims against the Lender in the Foreclosure Action. As consideration for the terms of the Plan, as soon as practicable following the Effective Date, the Lender, Debtor, and the Guarantors shall discontinue all actions with prejudice and all claims between the parties to the Foreclosure Action are settled, discontinued with prejudice, waived, and released; provided, however, in the event the current occupants of the Property, including without limitation Eli Wilner, fail to vacate the Property by not later than the Deadline to Vacate, the Lender shall not be required to

dismiss the Foreclosure Action as against Guarantors and Lender's claims against Guarantors shall survive.

**F.**     **Exclusivity**

`The Debtor's exclusive period during which only it could file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code expires on June 13, 2022, and its exclusive period to obtain acceptances of the plan expires on August 12, 2022.  The Debtor has filed the Plan within its exclusive period, and has until May 19, 2022 (or such later date as may be ordered by the Court) to obtain confirmation of the Plan.

**IV.  SUMMARY OF THE PLAN**

**A.**     **General**

SET FORTH IN THIS SECTION IS A SUMMARY OF CERTAIN OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH CONFIRMATION OF THE PLAN.  THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND CAREFUL READING OF THE PLAN.  STATEMENTS REGARDING PROJECTED AMOUNTS OF CLAIMS OR DISTRIBUTIONS (OR THE VALUE OF SUCH DISTRIBUTIONS) ARE ESTIMATES BY THE DEBTOR BASED ON AVAILABLE INFORMATION AND ARE NOT A REPRESENTATION AS TO THE ACCURACY OF THESE AMOUNTS.

**B.**     **Plan Overview/Property Sale**

The Plan is premised upon a Sale of the Property free and clear of all liens, claims and encumbrances.  The Debtor, through a broker to be retained in the Chapter 11 Case, shall market

9

the Property from entry of the order authorizing the broker's retention until the broker issues a call for offers.  The Debtor, in consultation with the Lender, has selected Hedgerow Exclusive Properties ("Hedgerow") as the broker to market the Property.  Hedgerow will develop a marketing plan and work towards execution of a contract with a purchaser for the highest price possible. Hedgerow shall make a call for offers between the dates of June 30, 2022 and July 31, 2022, the precise date which shall be determined by Hedgerow based upon Hedgerow's professional judgment and pursuant to a marketing plan approved by the Debtor and the Lender. The period from the date on which an Order is entered approving the retention of Hedgerow and the date on which the foregoing call for offers is made by Hedgerow shall be referred to as the "Marketing Period." At the conclusion of the Marketing Period, the Debtor shall file the 363 Motion seeking entry of an order authorizing the sale of the Property free and clear of all liens, claims and encumbrances as further discussed herein.  If no contract satisfactory to the Lender is executed within such Marketing Period (or such additional time as is agreed to by the Lender in its sole and absolute discretion), the Sale Motion shall seek an order approving a Sale to the Lender or its designee by credit bid, which sale shall close on or before the 30th day following the call for offers.

The Sale Expenses will be paid from the proceeds of the Sale.  Any Allowed Secured Real Estate Tax Claims shall also be paid at the closing of the Sale.  Pursuant to section 1146(a) of the Bankruptcy Code, the Sale of the Property shall not be subject to any stamp, transfer or similar tax.  The remaining proceeds of the Sale shall be paid as follows:

(a)    In the event of a Sale in an amount of $28,000,000 or less (net of all Sale Expenses and the Secured Real Estate Tax Claims), title to the Property shall be transferred to the Lender or its designee by way of credit bid or to the actual Cash bidder in the sole and

absolute discretion of the Lender.  In the event that the Property shall be transferred to the Lender or its designee by way of credit bid, the current occupants of the Property, including, without limitation, Eli Wilner, shall vacate the Property no later than thirty (30) days following the conclusion of the Marketing Period (the "Deadline to Vacate"); provided however that should the Marketing Period end through a call for offers prior to July 15, 2022, and Lender or its designee is the successful bidder by way of credit bid, then in no event shall the Deadline to Vacate occur prior to August 15, 2022.

      (b)    In the event that the Lender takes title to the Property by credit bid, the Lender shall pay to the Estate, at closing on the Sale of the Property, the Professional Fee Carve Out and the Creditor Carve Out and shall pay all Sale Expenses and the Secured Real Estate Tax Claims or, in the alternative to paying the Secured Real Estate Tax Claims, take title to the Property subject to such Secured Real Estate Tax Claims.  Any funds paid to the Estate pursuant to this paragraph (b) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel until such time as the Claims to be paid from such carveouts have been Allowed.  Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

      (c)    In the event that the Property is sold for Cash and the Sale proceeds, net of Sale Expenses and the Secured Real Estate Tax Claims, are greater than $28,000,000 and less than or equal to $34,000,000, at closing (i) Lender shall receive (x) $28,000,000 (less the amount of the Professional Fee Carve Out and the Creditor Carve Out, which will be retained by the Estate for distribution to holders of Allowed Fee Claims and Claimants entitled to receive distribution from the Creditor Carve Out on account of their Allowed Claims), as well as (y) 80% of amounts above $28,000,000 net of Sale Expenses and the Secured Real Estate Tax Claims and (ii) the Debtor shall receive the remaining Sale proceeds.  For the avoidance of

11

doubt, it is the intention that the Debtor receive the full amount of the Professional Fee Carve Out and Creditor Carve Out from the Lender. Any funds retained by the Estate pursuant to this paragraph (c) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel pending until such time as the Claims to be paid from such carveouts have been Allowed. Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

(d)      In the event that the Property is sold for Cash and the Sale proceeds net of Sale Expenses and the Secured Real Estate Tax Claims are greater than $34,000,000, in addition to the amounts set forth in paragraph (c) above, Lender shall also receive 70% of amounts above $34,000,000 and the Debtor shall receive the remaining Sale proceeds. In the event that the net Sale Proceeds are in excess of the amount necessary to satisfy the Lender Secured Claim and the Secured Real Estate Tax Claims, such excess shall be paid in full to the Debtor.

(e)      In the event that the Property shall be transferred to an entity other than the Lender or its designee by way of credit bid, all current occupants of the Property, including Eli Wilner, shall vacate the Property on or before the Deadline to Vacate, or such other period as determined by and agreed to by such third-party buyer (i.e., a purchaser other than the Lender or its designee).

(f)      The Professional Fee Carve Out shall be distributed $150,000 *pro rata* to holders of Allowed Fee Claims until paid in full. The Creditor Carve Out shall be distributed *pro rata* to holders of Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed General Unsecured Claims, in that order, until paid in full.   For avoidance of doubt, the Allowed fees and expenses of a Court-retained broker shall be paid from the Sale proceeds and not from the Professional Fee Carve Out or the Creditor Carve Out.

12

(g)     Any Sale proceeds received by the Debtor in excess of the Professional Fee Carve Out and the Creditor Carve Out (the "Excess Debtor Proceeds"), shall be distributed in the order of priority set forth in the Bankruptcy Code: to wit, *pro rata* to holders of Allowed Fee Claims until paid in full; thereafter, *pro rata* to holders of Allowed Priority Non-Tax Claims until paid in full; thereafter, *pro rata* to holders of Allowed Priority Tax Claims until paid in full; thereafter, *pro rata* to holders of Allowed General Unsecured Claims until paid in full; and finally, any remaining proceeds shall be paid to the holders of Equity Interests in the Debtor.

## C.     Treatment of Claims

The Plan separates Claims into four (4) unclassified categories and five (5) Classes.  A Claim is placed in a particular unclassified category or Class only to the extent that the Claim falls within the description of that category or Class.  A Claim is also placed in a particular category or Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that category or Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, United States Trustee Fees, Fee Claims and Priority Tax Claims have not been classified and, subject to compliance with the Administrative Bar Date and Fee Claims Bar Date set forth in Article III of the Plan, will be paid in full in Cash to the extent such Claims are Allowed.  All other Claims have been classified.  Each holder of a Claim should refer to Articles III, IV and V of the Plan for a full description of the classification and treatment of Claims provided under the Plan.

### 1.     Administrative Claims – Not Classified

An Administrative Claim is an unsecured Claim, other than a Fee Claim, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual, necessary costs and expenses incurred after the Petition Date of preserving the Estate and maintaining the Property.  Pursuant to the agreement with the Lender, Eli Wilner has agreed to fund all costs to maintain the Property through the Sale. As a result, the Debtor does not believe that there will be any unpaid Administrative Claims.

To the extent any such Administrative Claims remain unpaid as of the Distribution Date, Eli Wilner shall pay, from his personal funds, to each holder of an Allowed Administrative Claim shall be paid 100% of the Allowed amount of such Administrative Claim on or as soon as reasonably practicable after the Distribution Date, or upon such other less favorable terms as may be agreed upon by such holder and the Debtor.

Estimated Percentage Recovery:  100%

**United States Trustee Fees- Not Classified**

All statutory fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any applicable interest thereon shall be paid in full at the closing of the Sale as part of the Sale Expenses. Thereafter, such fees and any applicable interest thereon shall be paid by the Debtor or Eli Wilner in accordance with the applicable schedule for payment of such fees until the entry of a final decree or the case is dismissed or converted.

Estimated Percentage Recovery: 100%

**2.      Fee Claims – Not Classified**

Fee Claims are defined under the Plan as Claims for compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in

14

connection with the Chapter 11 Case, which are subject to the approval by the Court after appropriate fee application.

Each holder of an Allowed Fee Claim for services rendered through the Effective Date shall receive up to 100% of the Allowed amount of such Claim *pro rata* from the Professional Fee Carve Out, on or as soon as reasonably practicable after the Distribution Date, or receive such other less favorable treatment as may be agreed by such holder and the Debtor.

Cullen and Dykman LLP is the only Claimant within this class at this time.   It is anticipated that fees to Debtor's counsel will amount to approximately $150,000, which is the amount of the Professional Fee Carve Out.

Estimated Percentage Recovery: 100%

### 3.       Priority Tax Claims – Not Classified

A Priority Tax Claim is defined as a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.  Each holder of an Allowed Priority Tax Claim shall be paid 100% of the Allowed amount of such Claim, or funds sufficient to pay such Claims in full upon Allowance shall be escrowed with Debtor's counsel, from the Creditor Carve Out on or as soon as reasonably practicable after the Distribution Date, or shall receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

The Internal Revenue Service has filed a Claim in the sum of $2,500. Although the Bar Date for governmental entities is not until August 22, 2022, it is anticipated that Priority Tax Claims will be *de minimus*.

Estimated Percentage Recovery:  100%

4.      **Priority Non-Tax Claims – Class 1**

Each holder of an Allowed Priority Non-Tax Claim shall be paid in full on or as soon as reasonably practicable after the Distribution Date from the Creditor Carve Out and the Excess Debtor Proceeds up to the full amount of their Claims. The holder of an Allowed Priority Non-Tax Claim may receive such other less favorable treatment as may be agreed upon by the Claimant and the Debtor.

It is anticipated as there will be no Priority Non-Tax Claims against the Debtor, as the Debtor is not an operating entity.

Estimated Percentage Recovery:  N/A

5.      **Lender Secured Claim – Class 2**

Class 2 under the Plan consists of the Lender Secured Claim.  As set forth above and in Article II of the Plan, in full satisfaction of the Lender Secured Claim, the Lender shall receive either (a) title to the Property if the net proceeds of the Sale after payment of Sale Expenses and the Secured Real Estate Taxes are less than $28,000,000; or (b) (i) 80% of each dollar of Sale proceeds after payment of Sale Expenses and the Secured Real Estate Taxes in excess of $28,000,000 but less than or equal to $34,000,000 plus (ii) 70% of each dollar of Sale proceeds after payment of Sale Expenses and the Secured Real Estate Taxes in excess of $34,000,000, up to the full amount of the Lender Secured Claim. From the proceeds to which the Lender is otherwise entitled, the Lender shall pay the Professional Fee Carve Out and the Creditor Carve Out to the Debtor for payments under the Plan.   Any deficiency in payment of the Lender Secured Claim shall be waived and released by the Lender as against the Debtor and, except as set forth in Section 7.3 of the Plan, the Guarantors of the debt.  Upon receipt of the Distribution to which the Lender is entitled, the Lender's lien against the Property shall be released and

16

satisfied. The Lender has agreed to its treatment under the Plan, and will vote in favor of the Plan.

Estimated Percentage Recovery: unknown

**6.** **Secured Real Estate Tax Claims – Class 3**

Class 3 under the Plan consists of the Secured Real Estate Tax Claims in the scheduled amount of approximately $182,933. Allowed Secured Real Estate Tax Claims shall be paid in full at the Closing from the proceeds of Sale, or by the Lender in the event that the Lender receives title to the Property pursuant to section 5.2(a) of the Plan, unless the Lender elects to take title to the Property subject to such Secured Real Estate Tax Claims. In the event such Claims are not Allowed at the Closing, the full amount of such Claims shall be escrowed with Debtor's counsel pending allowance and shall be paid as soon as reasonably practicable after Allowance of such Claims with any disallowed portion of such Claims being returned within five (5) business days of such Claim becoming a Disallowed Claim in whole or in part (a) to the Lender if the Lender Secured Claim has not been paid in full, or (b) to the Estate, if the Lender Secured Claim has been paid in full. Upon receipt of the Distribution to which a holder of Claims in this Class is entitled, such Claimant's lien against the Property shall be deemed released and satisfied.

**7.** Estimated Percentage Recovery: 100% **General Unsecured Claims – Class 4**

Class 4 consists of any Claim that is not an Administrative Claim, Fee Claim, Priority Tax Claim, Lender Secured Claim, Priority Non-Tax Claim, Secured Real Estate Tax Claim, or included within any other Class of Claims. It is anticipated that claims within this Class will amount to approximately $212,791. Each holder of a General Unsecured Claim shall be paid *pro*

17

*rata* from the Creditor Carve Out and *pro rata* from the Excess Debtor Proceeds, up to the full amount of their Claims.

Estimated Percentage Recovery: 10%-100%

### 8.       Equity Interest – Class 5

Class 5 includes the holders of Equity Interests in the Debtor.  Such holders shall receive the remainder of the Sale proceeds after payment of all Allowed Claims.

Estimated Percentage Recovery: 0%-100%

### D.    Treatment of Executory Contracts and Unexpired Leases

### 1.    Assumption or Rejection of Executory Contracts and Other Unexpired Leases

As of the Confirmation Date, but subject to the occurrence of the Effective Date, any prepetition executory contracts or unexpired leases not previously assumed or rejected shall be deemed rejected under sections 365 and 1123 of the Bankruptcy Code, except (a) any executory contract or unexpired lease that is the subject of a separate motion to assume, assume and assign or reject filed pursuant to section 365 of the Bankruptcy Code before the entry of the Confirmation Order; or (b) any executory contract or unexpired lease which shall have expired or terminated pursuant to its terms; provided, however, that rejection pursuant hereto shall not constitute an admission that any such executory contracts or unexpired leases are in fact executory contracts or unexpired leases or that the Debtor had any liability thereunder.

The Confirmation Order shall constitute an order of the Court approving the rejections or assumptions described herein, pursuant to section 365 of the Bankruptcy Code, as of the Confirmation Date, but subject to the occurrence of the Effective Date.   Notwithstanding anything in the Plan to the contrary, no executory contract or unexpired lease shall be deemed

18

assumed or rejected pursuant to the terms of Article IX of the Plan if the Effective Date fails to occur for any reason.

### 2.    Bar Date for Rejection Damages

**If the rejection of an executory contract or unexpired lease pursuant to Article IX of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Debtor, the Debtor's Estate, or their property unless the party files an original proof of Claim (with supporting documentation) with the Court <u>within thirty (30) days after entry of the Confirmation Order.</u>**

There shall be no restriction on the rights of the Debtor and/or the Plan Sponsor to object to any Claims relating to the rejection of executory contracts or unexpired leases, or to assert any defense or counterclaim to any such Claim, notwithstanding that such defenses or counterclaims may not have otherwise been identified in the Plan, Disclosure Statement or otherwise.

There are no executory contracts or unexpired leases. In the event, however, any Claims arising from the rejection of an executory contract or unexpired lease are filed and Allowed, the same will constitute a Class 4 General Unsecured Claim. Distributions and Claims Resolution Provisions

### 3.    Objections to Claims

From and after the Effective Date, the Debtor shall have the right to object to the allowance of any Claim other than the Secured Lender Claim, which Claim is Allowed, and may file with the Court any appropriate motion with respect thereto within sixty (60) days of the Effective Date.  Such deadline may be extended by Order of the Court.

4.      **Claims Filed After Bar Date.**

Any Claim filed after any applicable Bar Date shall, unless such Claim amends a Claim filed before the Bar Date or unless the Court otherwise directs, be deemed Disallowed in full and expunged without further order of the Court.  Filed or Scheduled Claims may be amended or reconsidered only as provided in the Bankruptcy Code and Bankruptcy Rules.  A Claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim, or as otherwise permitted by the Court, the Bankruptcy Rules or applicable law. After the Confirmation Date, except as otherwise specifically set forth in the Plan, a Claim may not be filed or amended without the authorization of the Court or consent of the Debtor.

5.      **Withholding Taxes and Expenses of Distribution**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to affect the withholding of such taxes, and the Debtor shall be authorized to withhold Distribution on such Claims until the requisite information is received.  If such information is not received within ninety (90) days after the Distribution Date, the provisions of Section 8.4 of the Plan shall apply.

6.      **Disputed Payment**

Notwithstanding anything to the contrary in the Plan, no Distribution shall be made to the holder of any Claim, including by way of setoff or recoupment by any such claimant, if at any time before an otherwise applicable Distribution is issued, the Debtor has taken action to recover on any causes of action or defenses against or with regard to the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such cause of action or defense is resolved by Final Order or agreement of the Debtor.

Additionally, if any dispute arises as to the identity of a holder of an Allowed Claim who is entitled to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, reserve for such Distribution until the disposition thereof shall be determined by Court order or by written agreement among the interested parties to such dispute.

7.      **Setoffs and Recoupment**

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Court, the Debtor may, pursuant to applicable law, set off or recoup against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made and before any Distribution is made on account of such Claim), any and all of the claims, rights and causes of action of any nature that the Debtor or the Estate may hold against the holder of such Claim.

Neither the failure to effect such a setoff or recoupment, the allowance of any Claim hereunder, any other action or omission of the Debtor, nor any provision of the Plan shall constitute a waiver or release by the Debtor of any such claims, rights and causes of action that the Debtor may possess against such holder.  To the extent the Debtor fails to setoff or recoup against a creditor and seeks to collect a claim from such creditor after a Distribution to such

21

creditor pursuant to the Plan, the Debtor, if successful in asserting such claim, shall be entitled to full recovery against such creditor.  The Debtor may seek periodic Court approval for any such setoff or recoupment.

**8.**     **Interest on Claims.**

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post-petition and post-confirmation interest shall <u>not</u> accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim; <u>provided that</u>, in the event that the gross Sale proceeds are in excess of $35,000,476.96, Lender reserves the right to seek additional post-petition interest and attorneys' fees, and the Debtor reserves the right to object to such additional post-petition interest and attorneys' fees.

## V.  MEANS OF IMPLEMENTATION OF THE PLAN; EFFECT OF CONFIRMATION

**A.**     **Funding of the Plan**

The Plan will be funded from the proceeds of the Sale as further addressed in Part IV(B) above.  It is anticipated that all creditors will receive a distribution from the Sale proceeds.  THE ACTUAL RECOVERIES UNDER THE PLAN WILL DEPEND UPON A VARIETY OF FACTORS INCLUDING, BUT NOT LIMITED TO, THE AMOUNT RECEIVED FROM THE SALE.

**B.**     **Injunction**

**The Confirmation Order will provide, among other things, that effective on the Confirmation Date, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor are, with respect to any such Claims or Equity Interests, permanently enjoined from and after the Confirmation Date from (a) taking any action**

22

against, or interfering in any respect with, the property being distributed in accordance with the Plan or the Distribution being effectuated through the Plan (other than actions to enforce any rights or obligations under the Plan);  (b) asserting any right of setoff or recoupment of any kind, directly or indirectly, against any obligation due the Estate, except as contemplated or allowed by the Plan; and (c) prosecuting or otherwise asserting any right, claim or cause of action specifically exculpated, released or enjoined pursuant to the Plan.

## C.    Release of the Debtor

Effective as of the Effective Date, all holders of Claims shall be permanently enjoined from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against or concerning the Debtor, the Estate or the Property which arose prior to the Effective Date.

## D.    Release by the Debtor.

In consideration of the agreements of the Lender contained in the Plan, the Debtor, its Estate and any person claiming through or on behalf of the Debtor or its Estate including Eli Wilner, Barbara Brennan, Mangos Investors, LLLP, Mangos Holdings, LLC, their successors and assigns shall be permanently enjoined from and after the Effective Date from commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other form) against Lender based on any claim or cause of action against the Lender which arose prior to the Effective Date.

23

E.    **Discharge**

The Debtor is not entitled to, and will not receive, a discharge since the Plan is a liquidating plan.

F.    **Exculpation**

**To the extent permitted under section 1125(e) of the Bankruptcy Code, the Debtor, the Lender, all of their respective professionals, consultants, representatives, employees, officers, directors, managers and agents, and their successors and assigns, shall neither have, nor incur, any liability to any person or entity for any postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the consummation of the Plan, including but not limited to the marketing of and sales process relating to the Sale, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor; <u>provided</u> that the foregoing "Exculpation" shall have no effect on the liability of any of the parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct or limit the liability of any professional to its client pursuant to DR 6-102 of the Code of Professional Responsibility; <u>provided</u>, <u>further</u>, that each of the foregoing Entities shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement. Notwithstanding the foregoing, nothing set forth above shall operate to limit or excuse compliance by any Entity with any of their respective obligations under the Plan or**

24

**otherwise or to modify the effect or consequence of any such failure to comply with such obligations.**

**G.      Post-Confirmation Jurisdiction of the Court**

Notwithstanding confirmation of the Plan or the occurrence of the Effective Date, the Court will retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

1.      To determine the allowability, classification, or priority of Claims upon objection by the Debtor or any other party in interest, and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

2.      To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date with respect to any Person;

3.      To protect the property of the Estate from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

4.      To determine any and all applications for allowance of Fee Claims;

5.      To determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

6.      To determine any dispute relating the Sale and confirmation of the Sale and/or any other matter that in any way relates to the foregoing;

7.      To determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, or to determine any motion to reject an executory contract or unexpired lease pursuant to the Plan;

8.      To determine all Estate Causes of Action, applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Chapter 11 Case, including any remands;

9.      To enter a Final Order closing the Chapter 11 Case;

10.     To modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out their intent and purposes;

11.     To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the fullest extent authorized by the Bankruptcy Code;

12.     To determine any tax liability pursuant to section 505 of the Bankruptcy Code;

13.     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.     To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, and the making of Distributions thereunder;

15.     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, any Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

16.     To resolve any dispute or matter arising under or in connection with any order of the Court, whether entered in the Chapter 11 Case or after the Confirmation Date;

17.     To resolve any disputes concerning any release of a Person hereunder whether or not such Person is a Debtor or the injunction against acts, employment of process or actions against such Person;

18.     To approve any Distributions, or objections thereto, under the Plan;

19.     To approve any Claims settlement entered into or offset exercised by the Plan Sponsor; and

20.     To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code.

## VI.  CONFIRMATION OF THE PLAN

### A.     Introduction

The Bankruptcy Code requires the Bankruptcy Court to determine whether a plan of reorganization complies with the technical requirements of chapter 11 of the Bankruptcy Code. It further requires that a plan proponent's disclosures concerning such plan have been adequate and have included information concerning all payments made or promised in connection with the plan.

To confirm the Plan, the Court must find that all of these and certain other requirements have been met.  Thus, even if the requisite vote is achieved for each Class of impaired Claims, the Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan.  Some of these statutory requirements are discussed below.

27

**B.      Conditions to Confirmation and Effective Date**

The Plan may not be confirmed unless the Disclosure Statement has been approved by the Court.  The Effective Date may not occur, and thus the Plan will not become effective, unless the Confirmation Order becomes a Final Order and the Sale closes.

If the Plan is confirmed, the Debtor expects the Effective Date to occur within thirty (30) days after entry of the Confirmation Order.

**C.      Voting Procedures and Standards**

Holders of Claims in Classes that are "impaired" under the Plan (but not deemed to reject the Plan by virtue of receiving no Distributions thereunder) will receive a Ballot with this Disclosure Statement for the acceptance or rejection of the Plan.  Any Claim whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered "impaired."  Instructions on how to complete a Ballot and the deadline for voting on the Plan are contained in the solicitation materials accompanying this Disclosure Statement and the Plan.

The following procedures for allowance of Claims for purposes of voting on the Plan shall apply to votes upon the Plan:

(a)      <u>Disputed Filed Claims</u>.  With regard to a Claim that is the subject of an objection filed at least twenty (20) days prior to the Ballot Deadline, such Claim will be disallowed provisionally for voting purposes, except to the extent and in the manner that (i) the Debtor agrees that the Claim should be allowed for voting purposes in its objection to such Claim; or (ii) such Claim is allowed temporarily for voting purposes in accordance with Bankruptcy Rule 3018.

28

(b)      Claims Estimated for Voting Purposes.  With respect to a Claim that has been estimated or otherwise allowed for voting purposes by order of the Bankruptcy Court, the amount and classification of such Claim will be that set by the Bankruptcy Court.

(c)      Wholly Unliquidated Claims.  A Claim recorded in the Schedules or in the Clerk's records as wholly unliquidated, contingent and/or undetermined will be accorded one vote, valued at one dollar, for the purposes of section 1126(c) of the Bankruptcy Code, unless the Claim is disputed as set forth in (a) above.

(d)      Late Claims.  With respect to a Claim as to which a proof of claim has not been timely filed (i.e., was filed after the Bar Date), the voting amount of such Claim (subject to any applicable limitations set forth below) will be equal to the amount listed, if any, in respect of such Claim in the Schedules, to the extent such Claim is not listed as contingent, unliquidated, or disputed, unless the Claim is disputed as set forth in (a) above.  If such Claim is either not listed in the Schedules, or is listed as contingent, unliquidated or disputed, then the Claim respecting such proof of claim will be disallowed provisionally for voting purposes.

(e)      Duplicate Claim.  A creditor will not be entitled to vote its Claim to the extent such Claim duplicates or has been superseded by another Claim of such creditor.

(f)      Undisputed Scheduled Claims.  With respect to a Claim that appears on the Schedules as undisputed, noncontingent and liquidated, and as to which no objection has been filed at least twenty (20) days prior to the Ballot Deadline, the amount and classification of such Claim shall be that specified in the Schedules unless superseded by an undisputed proof of claim.

(g)    <u>Court Determined Claims</u>.  With respect to a Claim for which an order has been entered reducing, reclassifying or allowing, the amount and classification of the Claim shall be that specified in such order.

The Ballots of creditors will be tabulated in accordance with the following procedures:

(i)    For the purpose of voting on the Plan, the Balloting Agent will be deemed to be in constructive receipt of any Ballot timely delivered to the address set forth above as designated for the receipt of Ballots cast on the Plan;

(ii)    Any Ballot received by the Balloting Agent after the Ballot Deadline shall not be counted;

(iii)    Pursuant to Bankruptcy Rule 3018(a), whenever a holder of a Claim submits more than one Ballot voting the same Claim prior to the Ballot Deadline, the last such Ballot sent and received shall count unless such holder has sufficient cause within the meaning of Bankruptcy Rule 3018(a) to submit, or the Debtor consents to the submission of, a superseding Ballot;

(iv)    If a Ballot does not include a Claim amount, the Ballot shall be deemed filed in the amount of a filed Claim, and if no Claim has been filed, in the amount of the Claim as specified in the Schedules, as long as the Claim is listed in the Schedules as undisputed, non-contingent or liquidated; otherwise, the Ballot shall not be counted.

(v)    If a holder of a Claim casts simultaneous duplicative Ballots voted inconsistently, then such Ballots shall not be counted;

(vi)    The authority of the signatory of each Ballot to complete and execute the Ballot shall be presumed;

(vii)    Any Ballot that is not signed shall not be counted;

(viii)    Any Ballot received timely by the Balloting Agent by electronic communication (i.e. email) shall be counted but signed Ballots received by the Balloting Agent by facsimile will not be counted;

(ix)    A holder of a Claim must vote all of its Claims within a particular Class under the Plan either to accept or reject the Plan and may not split its vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan, or that indicates both a vote for and against the Plan, will not be counted; and

(x)    Any Ballot that is timely received and executed but does not indicate whether the holder of the relevant Claim is voting for or against the Plan shall not be counted.

IF A BALLOT IS DAMAGED OR LOST OR IF YOU HAVE ANY QUESTIONS CONCERNING VOTING PROCEDURES, YOU MAY CONTACT THE BALLOTING AGENT.

A VOTE MAY BE DISREGARDED IF THE COURT DETERMINES, AFTER NOTICE AND A HEARING, THAT SUCH ACCEPTANCE OR REJECTION WAS NOT MADE OR SOLICITED OR PROCURED IN GOOD FAITH OR IN ACCORDANCE WITH THE PROVISIONS OF THE BANKRUPTCY CODE.

Any impaired Class of Claims that fails to achieve the requisite "accepted" vote will be deemed to have rejected the Plan.

**D.    Acceptance**

The Bankruptcy Code defines acceptance of a plan by an impaired Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of Claims of that Class that actually vote.  Acceptance of the Plan need only be solicited from

31

holders of Claims whose Claims are "impaired" and not deemed to have rejected the Plan. Except in the context of a "cram down" (i.e., confirmation of a plan that has not been accepted by all impaired classes), as a condition to confirmation of the Plan, the Bankruptcy Code requires that, with certain exceptions, each Class of impaired Claims accepts the Plan.

The Plan is predicated on the Voting Classes voting to accept the Plan. In the event the requisite vote is not obtained, the Debtor has the right, assuming that at least one Class of impaired Claims has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more Classes of impaired Claims if the Bankruptcy Court finds that the plan does not discriminate unfairly and is "fair and equitable" with respect to the rejecting class or classes. This procedure is commonly referred to in bankruptcy parlance as "cram down." If the Voting Classes vote to reject the Plan, the Debtor will seek a cram down of any such Class at the Confirmation Hearing.

## E.    Confirmation and Consummation

At the Confirmation Hearing, the Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan. Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan complies with the applicable provisions of the Bankruptcy Code.

- The proponents of the plan have complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by the proponents under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

32

- The proponents have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan. The appointment to, or continuance in, such office of such individual, must be consistent with the interests of creditors and equity security holders and with public policy and the proponents must have disclosed the identity of any insider that the reorganized debtors will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims, either each holder of a claim of such class has accepted the plan, or will receive or retain under the plan on account of such claim, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims has either accepted the plan or is not impaired under the plan.

- Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that allowed administrative expenses and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the order for relief in a case, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan (unless, as here, such liquidation or reorganization is proposed in the plan).

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Classes not receiving any Distribution under the Plan, the Debtor believes that (i) the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

Set forth below is a more detailed summary of the relevant statutory confirmation requirements.

## 1. Best Interests of Holders of Claims

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an allowed claim of each impaired class of claims will receive or retain under the plan on account of such claim, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

Claims will be paid in the priority order of the Bankruptcy Code and, therefore, the Debtor believes that this test is satisfied by the Plan.

## 2. Financial Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the plan. The Plan is a liquidating plan of reorganization. Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## 3. Acceptance by Impaired Classes

A class is "impaired" under a plan unless, with respect to each claim in such class, the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim entitles the holder of such claim; or (ii) notwithstanding any contractual provision or applicable law which entitles the holder of such claim to demand or receive accelerated payment on account of a default, cures any default, reinstates the original maturity of the obligation, compensates the

34

holder for any damages incurred as a result of reasonable reliance on such provision or law and does not otherwise alter the legal, equitable or contractual rights of such holder based upon such claim. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

### 4.    Cram Down

THE DEBTOR RESERVES THE RIGHT TO CRAM DOWN THE PLAN AGAINST NON-ACCEPTING CLASSES OF HOLDERS OF CLAIMS.

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted the Plan. The "cram down" provisions of the Bankruptcy Code are set forth in section 1129(b) of the Bankruptcy Code. Under the "cram down" provisions, upon the request of a plan proponent the Bankruptcy Court will confirm a plan despite the lack of acceptance by an impaired class or classes if the Bankruptcy Court finds that (i) the plan does not discriminate unfairly with respect to each non-accepting impaired class, (ii) the plan is fair and equitable with respect to each non-accepting impaired class, and (iii) at least one impaired class has accepted the plan. These standards ensure that holders of junior interests, such as stockholders, cannot retain any interest in the debtor under a plan of reorganization that has been rejected by a senior class of impaired claims or interests unless such impaired claims or interests are paid in full.

As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have narrow and specific meanings unique to bankruptcy law. A plan does not discriminate unfairly if claims in different classes but with similar priorities and characteristics receive or retain property of similar value under a plan. By establishing separate Classes for the holders of each type of Claim and by treating each holder of a Claim in each Class identically,

35

the Plan has been structured so as to meet the "unfair discrimination" test of section 1129(b) of the Bankruptcy Code.

The Bankruptcy Code sets forth different standards for establishing that a plan is "fair and equitable" with respect to a dissenting class, depending on whether the class is comprised of secured or unsecured claims.  In general, section 1129(b) of the Bankruptcy Code permits confirmation notwithstanding non-acceptance by an impaired class if that class and all junior classes are treated in accordance with the "absolute priority" rule, which requires that the dissenting class be paid in full before any junior class may receive anything under the plan.  In addition, case law surrounding section 1129(b) requires that no class senior to a non-accepting impaired class receives more than payment in full on its claims.

With respect to a class of unsecured claims that does not accept the Plan, either (i) each holder of an unsecured claim in the dissenting class receives or retains under such plan property of a value equal to the allowed amount of its unsecured claim, or (ii) the holders of claims that are junior to the claims of the holders of such unsecured claims will not receive or retain any property under the plan.  Additionally, the holders of claims that are senior to the claims of the dissenting class of unsecured claims receive no more than payment in full on their claims under the plan.  The Plan is designed to satisfy these standards.

If all the applicable requirements for confirmation of the Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except that one or more of Classes of impaired Claims have failed to accept the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code, the Debtor will request that the Bankruptcy Court confirm the Plan over the dissenting votes of such Classes in accordance with section 1129(b) of the Bankruptcy Code.  The Debtor believes that the Plan satisfies the "cram down" requirements of the Bankruptcy Code.  The

36

Debtor may seek confirmation of the Plan over the objection of dissenting Classes, as well as over the objection of individual holders of Claims who are members of an accepting Class.

5.      **Classification of Claims**

The Debtor believes that the Plan meets the classification requirements of the Bankruptcy Code which require that a plan of reorganization place each claim into a class with other claims which are "substantially similar."

6.      **Alternatives to the Plan**

The Debtor believes that the Plan provides creditors with the earliest and greatest possible value that can be realized on their respective Claims. The principal alternatives to Confirmation of the Plan are: (i) confirmation of alternative plans submitted by another party in interest; or (ii) conversion of the case to Chapter 7 of the Bankruptcy Code.

In this case, no other party filed an alternative plan.

The Debtor believes that a conversion to Chapter 7 would not be in the best interest of creditors. Liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would not generate a greater distribution to Creditors than proposed under the Plan. Conversion under Chapter 7 of the Bankruptcy Code would also entail the appointment of a Chapter 7 trustee and the incurrence of additional administrative fees and expenses, which would adversely affect any distributions to Claimants. In addition, in a conversion, the Estate would incur significant transfer taxes in connection with the Sale, thereby reducing the distributions to Claimants.

The Debtor believes that confirmation of the Plan is preferable to the alternatives described above because the Plan maximizes the value of the Property and will yield the greatest distributions to holders of Allowed Claims. These Claims, and such other Claims as might arise in the liquidation or result from the Debtor's Chapter 11 case, would be paid from the Debtor's

assets before its assets would be available to pay Allowed Claims other than the Lender Secured Claim, resulting in substantially less of a recovery for the Creditors of this Estate.

THE DEBTOR BELIEVES THAT THE PLAN<br>
PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY<br>
ON ACCOUNT OF CLAIMS AND THAT CONFIRMATION OF THE<br>
PLAN IS IN THE BEST INTERESTS OF CREDITORS.

**9.      Liquidation Analysis**

The Plan provides for the 363 Sale of the Property.  In connection with the Sale, the Lender has agreed to the payment of the Sale Expenses and the Professional Carve Out and Creditor Carve Out. Under a Chapter 7 liquidation, these funds would not be available for payment to Creditors. As such, Creditors other than the Lender would likely receive significantly less, or no, distributions in a Chapter 7 liquidation.

**VII.  CERTAIN RISK FACTORS TO BE CONSIDERED**

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.   THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.**

**A.      Risk That Distributions Will Be Less Than Estimated**

The projected distributions and recoveries set forth in this Disclosure Statement are based on the Debtor's estimate of Allowed Claims and cash available for Distribution.  There can be no assurance that the estimates will prove accurate.

38

B.      **Bankruptcy Risks**

1.      **Objection to Classifications**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims of such class. The Debtor believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Court would reach the same conclusion.

2.      **Risk of Non-Confirmation of the Plan**

Even if the Voting Classes accept the Plan, the Plan might not be confirmed by the Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan satisfies all the requirements for confirmation of a liquidating plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Court would also conclude that the requirements for confirmation of the Plan have been satisfied.

**VIII.  TAX CONSEQUENCES**

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF

COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR WITH RESPECT THERETO.

NOTHING HEREIN CONSTITUTES TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED HEREIN.  ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

## IX.  CONCLUSION

The Debtor believes that confirmation and implementation of the Plan will provide each creditor with a greater recovery than it would receive if the Debtor were to liquidate and distribute its assets under chapter 7, in which case there would likely be a delay in making distributions to creditors and creditors would likely receive smaller distributions.  Thus, the Debtor recommends confirmation and implementation of the Plan as the best possible outcome for creditors.

The Debtor urges holders of impaired Claims to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be received by the Ballot Deadline.

DATED:        April 21, 2022

MONTAUK CLIFFS, LLC


By:      */s/ Eli Wilner*
              Name: Eli Wilner
              Title: Manager

CULLEN AND DYKMAN LLP
Attorneys for the Debtor


By: */s/ Bonnie Pollack*_____
        Matthew G. Roseman, Esq.
        Bonnie L. Pollack, Esq.
        Michael Traison, Esq.
        100 Quentin Roosevelt Boulevard
        Garden City, New York 11530
        (516) 357-3700

22373.2000 20289864v4