CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Michael Traison, Esq.

Attorneys for Montauk Cliffs, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                :

In re:                               :   Chapter 11
                                                :

MONTAUK CLIFFS, LLC,         :   Case No. 22-70312 (REG)
                                                :

                                                :

                       Debtor.       :

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN</u>**

# **TABLE OF CONTENTS**

Page

I.      BACKGROUND AND BRIEF DESCRIPTION OF THE PLAN ……………….  2

II.     THE PLAN MEETS EACH REQUIREMENT FOR CONFIRMATION UNDER
        SECTION 1129 OF THE BANKRUPTCY CODE ………………………………  5

        A.      Section 1129(a) Requirements …………………………………………  5

        1.      The Plan Complies with the Applicable Provisions of  Title 11
                (Section 1129(a)(1)) ………………………………....………………....…  5

        2.      The Debtor has Complied with the Applicable Provisions of Title 11
                (Section 1129(a)(2)) …………………………………………………………  12

        3.      The Plan Was Proposed in Good Faith (Section 1129(a)(3)) …………….  13

        4.      The Plan Provides for Payment for Services and Expenses
                (Section 1129(a)(4)) …………………………………………………….....  15

        5.      The Plan Provides for the Disclosure of the Service of Certain
                Individuals (Section 1129(a)(5)) …………………………………………  15

        6.      The Plan Does Not Provide for Rate Changes Subject to
                Section 1129(a)(6) ………………………………………………………...  16

        7.      The Plan Satisfies The Best Interests of Creditors Test
                (Section 1129(a)(7)) ……………………………………………………  16

        8.      Acceptance by All Impaired Classes (Section 1129(a)(8)) ……………….  17

        9.      Treatment of Priority Claims (Section 1129(a)(9)) ……………………….  18

        10.     Acceptance of at Least One Impaired Class (Section 1129(a)(10)) ………  18

        11.     The Plan is Feasible (Section 1129(a)(11)) ………………………………  19

        12.     The Plan Provides for Payment of Certain Fees (Section 1129(a)(12)) …..  20

        13.     The Plan Does Not Need To Provide for Continuation of Retiree
                Benefits (Section 1129(a)(13)) ……………..………………………….....  20

        14.     The Provisions of The Provisions of Sections 1129(a)(14), (15) and (16)
                are Inapplicable in This Case ……………..…………………………………  20

22373.2000 20323113v2

15.    The Provisions of Sections 1129(a)(1) Through 1129(a)(16), Other Than 1129(a)(8) Have Been Satisfied.  The Plan May Be Confirmed Notwithstanding the Failure to Satisfy Section 1129(a)(8) of the Bankruptcy Code …………………………………………………………… 21

B.    <u>Section 1129(b) Requirements</u> ………………………………………… 21

    1.    The Plan Does Not Discriminate Unfairly With Respect To The Deemed Rejecting Classes………………………………... 21

    2.    The Plan is Fair and Equitable With Respect To The Deemed Rejecting Class ………………………………………… 22

III.    CONCLUSION …………………………………………………………... 23

22373.2000 20323113v2

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Michael Traison, Esq.

Attorneys for Montauk Cliffs, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                :

In re:                         :   Chapter 11
                                :

MONTAUK CLIFFS, LLC,       :   Case No. 22-70312 (REG)
                                :
                                :

                  Debtor.    :
                                :

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF SECOND AMENDED CHAPTER 11 PLAN

      Montauk Cliffs, LLC (the "Debtor"), submits this memorandum of law in support of

confirmation of its Second Amended Chapter 11 Plan dated April 21, 2022 (the "Plan").[1]

      The Plan has been accepted by two (2) impaired Classes of Claims entitled to vote under

the Plan, and deemed to have been rejected by two (2) impaired Class entitled to vote as those

Classes did not vote.  Notwithstanding the deemed rejection by those Classes and the provisions

of section 1129(a)(8) of the Bankruptcy Code, which requires that each class under a plan either

accept the plan or not be impaired under the plan, the Plan may nevertheless be confirmed

pursuant to section 1129(b) of the Bankruptcy Code because the Plan is fair and equitable, and

---
[1]      All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or
the Disclosure Statement (as defined herein).

does not discriminate unfairly, as those terms are applied under section 1129(b), as is more fully discussed below.

The Court set May 26, 2022 as the deadline for filing any objections to confirmation of the Plan.  No objections were filed.

This Memorandum of Law, together with the affidavit of Eli Wilner filed on June 2, 2022, the Certificate of Ballots filed on May 27, 2022 and the arguments to be made and/or any other evidence to be adduced at the Confirmation Hearing, will prove that the Plan meets the requirements of section 1129 of the Bankruptcy Code, and should be confirmed by the Court.

## I.    __BACKGROUND AND BRIEF DESCRIPTION OF THE PLAN__

On March 19, 2022, the Debtor filed its initial plan and disclosure statement.  As a result of continuing negotiations with the Lender regarding the procedures respecting the Sale of the Debtor's Property, the Debtor filed an amended chapter 11 plan and amended disclosure statement on April 19, 2022.  The plan and disclosure statement were further amended as a result of the hearing to approve the disclosure statement, resulting in the second amended plan and second amended disclosure statement being filed on April 21, 2022.

By Order dated April 21, 2022 (the "Approval Order") the Court, *inter alia*, approved the Second Amended Disclosure Statement (the "Disclosure Statement") as containing adequate information in accordance with section 1125 of the Bankruptcy Code; authorized the transmittal of the Disclosure Statement, the Second Amended Plan, the Ballot, the Approval Order and the Notice (collectively the "Solicitation Package") to all creditors and parties in interest; fixed May 26, 2022 as the last date for receipt of Ballots accepting or rejecting the Plan; fixed May 26, 2022 as the last date for filing objections to Confirmation of the Plan; and scheduled the hearing on Confirmation of the Plan to occur on June 8, 2022, which was rescheduled by the Court to August 10, 2022 (the "Confirmation Hearing").   The Solicitation Package was served in

accordance with the Approval Order and the Ballots of acceptances and rejections of the Plan by the holders of Claims entitled to vote were received and tallied by the Balloting Agent, Cullen and Dykman LLP ("C&D").

The Plan is a Liquidating Plan as the Debtor's only asset, the Property, will be sold to pay Allowed Claims against the Debtor. The Sale will be free and clear of liens, claims and encumbrances under section 363(f) of the Bankruptcy Code. Pursuant to the Plan, the Debtor's retained broker, Hedgerow, made a call for offers to purchase the Property on July 29, 2022 asking for offers to be made by August 1, 2022.   As a result of the call to offer, three (3) bids were received, which are being discussed with the Lender. As provided for in the Plan, the Debtor will be making a motion to sell the Property under section 363 of the Bankruptcy Code as soon as the offers are finally negotiated. It is anticipated that a hearing to approve the Sale will occur in August or early September 2022.

At the closing of the Sale, Sale Expenses (including commissions, closing costs and U.S. Trustee Fees) and outstanding Real Estate Taxes shall be paid and the remaining proceeds shall be distributed to the Lender, except for the Creditor Carve Out to be paid to Creditors and the Professional Fee Carve Out to be paid to Debtor's counsel upon approval of fees and expenses. Specifically:

(a)    In the event of a Sale in an amount of $28,000,000 or less (net of all Sale Expenses and the Secured Real Estate Tax Claims), title to the Property shall be transferred to the Lender or its designee by way of credit bid or to the actual Cash bidder in the sole and absolute discretion of the Lender.  In the event that the Property shall be transferred to the Lender or its designee by way of credit bid, the current occupants of the Property, including,

without limitation, Eli Wilner, shall vacate the Property no later than thirty (30) days following the conclusion of the Marketing Period (the "Deadline to Vacate").

(b)　　In the event that the Lender takes title to the Property by credit bid, the Lender shall pay to the Estate, at closing on the Sale of the Property, the Professional Fee Carve Out and the Creditor Carve Out and shall pay all Sale Expenses and the Secured Real Estate Tax Claims or, in the alternative to paying the Secured Real Estate Tax Claims, take title to the Property subject to such Secured Real Estate Tax Claims.  Any funds paid to the Estate pursuant to this paragraph (b) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel until such time as the Claims to be paid from such carveouts have been Allowed.  Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

(c)　　In the event that the Property is sold for Cash and the Sale proceeds, net of Sale Expenses and the Secured Real Estate Tax Claims, are greater than $28,000,000 and less than or equal to $34,000,000, at closing (i) Lender shall receive (x) $28,000,000 (less the amount of the Professional Fee Carve Out and the Creditor Carve Out, which will be retained by the Estate for distribution to holders of Allowed Fee Claims and Claimants entitled to receive distribution from the Creditor Carve Out on account of their Allowed Claims), as well as (y) 80% of amounts above $28,000,000 net of Sale Expenses and the Secured Real Estate Tax Claims and (ii) the Debtor shall receive the remaining Sale proceeds.  For the avoidance of doubt, it is the intention that the Debtor receive the full amount of the Professional Fee Carve Out and Creditor Carve Out from the Lender.  Any funds retained by the Estate pursuant to this paragraph (c) on account of the Professional Fee Carve Out and the Creditor Carve Out shall be held in escrow by Debtor's counsel until such time as the Claims to be paid from such carveouts

4

have been Allowed.  Any funds remaining from the carveouts following payment in full of such Allowed claims shall be returned to Lender.

        (d)    In the event that the Property is sold for Cash and the Sale proceeds net of Sale Expenses and the Secured Real Estate Tax Claims are greater than $34,000,000, in addition to the amounts set forth in paragraph (c) above, Lender shall also receive 70% of amounts above $34,000,000 and the Debtor shall receive the remaining Sale proceeds.  In the event that the net Sale Proceeds are in excess of the amount necessary to satisfy the Lender Secured Claim and the Secured Real Estate Tax Claims, such excess shall be paid in full to the Debtor.

        (e)    In the event that the Property shall be transferred to an entity other than the Lender or its designee by way of credit bid, all current occupants of the Property, including Eli Wilner, shall vacate the Property on or before the Deadline to Vacate, or such other period as determined by and agreed to by such third-party buyer (i.e., a purchaser other than the Lender or its designee).

Finally, since the Property is being sold pursuant to the Plan, the Sale will be exempt from transfer taxes in accordance with section 1146 of the Bankruptcy Code.

## II. THE PLAN MEETS EACH REQUIREMENT FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE

### A. Section 1129(a) Requirements

The Court may confirm a chapter 11 plan under section 1129(a) of the Bankruptcy Code only if the requirements of its various subsections are met. The following discussion demonstrates that the Plan meets these requirements.

#### 1. The Plan Complies with the Applicable Provisions of Title 11 (Section 1129(a)(1))

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the "applicable provisions" of title 11. 11 U.S.C. §1129(a)(1). The legislative history of section

1129(a)(1) explains that this provision embodies the requirements of sections 1122 and 1123 of the Bankruptcy Code governing the classification of claims and the contents of the plan, respectively. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also Kane v. Johns-Manville Corp.,* 843 F.2d 636, 648 (2d Cir. 1988) (stating that "the legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans"); *In re Texaco, Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1998). Accordingly, in determining whether a plan complies with section 1129(a)(1), a court must consider: (i) section 1122 of the Bankruptcy Code, which governs classification of claims; and (ii) section 1123(a)(1) of the Bankruptcy Code, which sets forth certain items that a plan must contain.

(a) The Plan Properly Designates Classes of Claims
(Sections 1123(a)(1) and 1122)

Section 1123(a)(1) of the Bankruptcy Code requires that a plan classify all claims, with the exception of certain priority claims, and all interests, and requires that such classification comply with section 1122 of the Bankruptcy Code. 11 U.S.C. § 1123(a)(1); *In re Texaco Inc.,* 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988).

(i) The Plan's Classification Scheme

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Articles III and IV of the Plan designate Classes of Claims as follows:

- Unclassified Claims pursuant to 11 U.S.C. § 1123(a)(1) (not impaired and not entitled to vote on the Plan; deemed to have accepted the Plan):

  Administrative Claims
  U.S. Trustee Fees
  Professional Fee Claims
  Priority Tax Claims

- Classes of Claims (all entitled to vote on the Plan except for unimpaired Class 3):

    Class 1 - Priority Non-Tax Claims.
    Class 2 - Lender Secured Claim.
    Class 3 - Secured Real Estate Tax Claims.
    Class 4 - General Unsecured Claims.
    Class 5 – Equity Interests.

(ii)    <u>Each Claim Is Substantially Similar to the Other Claims in Such Class</u>

Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The relevant inquiry under section 1122(a) is whether all of the claims in any given class are substantially similar.

The Plan's classification of Claims and Interests into five (5) Classes and four (4) groups of unclassified Claims is proper because each of these Classes of Claims differ in legal and factual nature and the Claims contained within each Class are substantially similar in nature.  The relevant inquiry under section 1122(a) of the Bankruptcy Code is whether all of the claims in any given class are substantially similar.  "[S]ubstantially similar", as used in section 1122(a) of the Bankruptcy Code, generally has been interpreted to mean similar in legal character to other claims against a debtor's estate or interests in a debtor.  *In re MCorp Fin., Inc.*, 137 B.R. 219, 226 (Bankr. S.D. Tex. 1992).  The "substantially similar" requirement found in section 1122(a) does not require that all substantially similar claims be placed in the same class, but rather that all claims within a class be substantially similar to one another.  *See Barnes v Whelan (In re Barnes)*, 689 F.2d 193, 201 (D.C. Cir. 1982); *see also In re 11,111, Inc.*, 117 B.R. 471, 476 (Bankr. D. Minn. 1990).  As long as there is some rational basis to do so, courts have granted plan proponents significant flexibility in placing similar claims into different classes under section 1122(a).  *See Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay*

*Corp.*), 10 F.3d 934, 956-57 (2nd Cir. 1993) (approving of separate classification of two types of claims where there was a rational basis for such a separation); *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3rd Cir. 1987) (recognizing that a class of claims must be reasonable and allowing a plan proponent to group similar claims in different classes).

Here, all Classes hold similar Claims and there is a rational basis for all of the separate Classes, since the Claims in each of the Classes differ from Claims in each of the other Classes.  Accordingly, the Plan satisfies section 1122(a) of the Bankruptcy Code.

(b)    The Plan Properly Specifies Unimpaired Classes (Section 1123(a)(2))

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under the plan. 11 U.S.C. § 1123(a)(2). Because Article IV of the Plan specifies that Claims in Class 3 are "not impaired" under the Plan and the remainder of the Classes are or may be impaired, the Plan meets the requirement of section 1123(a)(2) of the Bankruptcy Code.

(c)    The Plan Properly Specifies the Treatment of Impaired Classes (Section 1123(a)(3))

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. §1123(a)(3). Article V of the Plan sets forth the treatment of all impaired Classes of Claims. The Plan, therefore, satisfies the requirement of section 1123(a)(3) of the Bankruptcy Code.

(d)    The Plan Provides for Equal Treatment Within Classes (Section 1123(a)(4))

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. §

8

1123(a)(4). In this case, the Plan uniformly provides for the same treatment of each Claim of a particular Class.   As such, the Plan meets the requirement of section 1123(a)(4) of the Bankruptcy Code.

(e)     The Plan Provides for Adequate Means of Implementation (Section 1123(a)(5))

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide "adequate means" for its implementation and sets forth specific examples of such adequate means, including, but not limited to: cancellation or modification of indentures or other instruments, amendment of the debtor's charter, issuance of new securities, retention by the debtor of all or any part of property of the estate, sales of the debtor's property, extension of maturity dates or changes in interest rates or other terms of outstanding securities. 11 U.S.C. § 1123(a)(5).

The Plan meets this requirement.   Article II of the Plan describes the Sale of the Debtor's Property, and the resulting distribution to the various Classes of Claims.   The Sale is the mechanism for implementation of the Plan.   Accordingly, the Plan provides a procedure for its implementation and, thus, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

(f)     Contents of the Plan With Respect to Charter Provisions Inapplicable (Section 1123(a)(6))

Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion of provisions in a corporate debtor's charter (i) prohibiting the issuance of nonvoting equity securities, and (ii) providing for an "appropriate distribution" of voting power among those securities possessing voting power. 11 U.S.C. § 1123(a)(6).   Since the Plan is a liquidating plan which provides for a distribution of all the assets of the Debtor, section 1123(a)(6) of the Bankruptcy Code is inapplicable in this case.

9

(g)    The Plan Provides for the Manner of Selection of Officers, Directors, and Trustees and Their Successors (Section 1123(a)(7))

Section 1123(a)(7) of the Bankruptcy Code requires that a plan's provisions regarding the manner of selection of any director, officer, or trustee, or any successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7).  This section requires the Plan to contain provisions that are consistent with the interest of creditors and with public policy with respect to any officers, directors or trustees under a plan, or any successor thereto.  Since the Plan provides for the Sale of the Debtor's only assets, this section of the Bankruptcy Code is not applicable.

(h)    The Plan Contains No Provision Inconsistent with the Applicable Provisions of the Bankruptcy Code (Section 1123(b))

Section 1123(b) of the Bankruptcy Code permits the inclusion of a broad variety of additional provisions in a plan.  Here, the Plan impairs or leaves impaired claims (section 1123(b)(1)).  The Plan provides for the Sale of the Property (section 1123(b)(4)).  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides for the rejection of any executory contracts and unexpired leases not previously assumed or rejected.

Finally, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of title 11 (section 1123(b)(6)).  Article II of the Plan contemplates that the Court will set an Administrative Claim Bar Date for the filing of proofs of claim or applications for payment of Administrative Claims, arising subsequent to February 23, 2022 and before the Confirmation Date.  The Debtor is requesting that the Administrative Bar Date be set for a date which shall be thirty (30) days following the Confirmation Date.  Similarly, Article II of the Plan also provides for the setting of a deadline for the filing of applications for Professional Fee Claims, also thirty (30) days after the Confirmation Date.

It is well established that the Bankruptcy Court has the power to establish deadlines or bar dates by which a claim must be filed and such bar dates may prevent the payment of a claim that was not filed in a timely fashion. *In re Centurion Health of Carrolwood Inc*. 177 B.R. 371, 373 (Bankr. M.D. Fl. 1994). Similarly, courts routinely set bar dates for the filing of administrative claims as an administrative aid designed to assist with the conclusion of the chapter 11 case. *Wallach v. Frink America, Inc. (In re Nuttall Equipment Co. Inc.)* 188 B.R. 732, 738 (Bankr. W.D.N.Y. 1995) and *Centurion Health* at 373. It is essential that administrative claims which are entitled to first priority in a bankruptcy distribution, be established with finality before any distribution may be made to any subordinate class of creditors. *In re Honeywell Corporation*, et al., 68 B.R. 135, 137 (Bankr. S.D. Fla. 1986)

Furthermore, Bankruptcy Rule 3020(c) provides that "notwithstanding the entry of an order of confirmation, the court may issue any other order necessary to administer the estate." It is routinely acknowledged that a Chapter 11 debtor may seek to impose an administrative claims bar date by establishing an administrative claims filing deadline as a provision of a confirmed plan. *Polysat, Inc. v. Union Tank Car (In re Polysat, Inc.)* 152 B.R. 886, 896 (Bankr. E.D. Pa. 1993). In addition, the setting of an administrative expense claim bar date is clearly within the Court's reasonable discretion under section 105(a) of the Bankruptcy Code. *Honeywell* at 137.

In addition, Article X of the Plan provides for certain releases, exculpations and injunctions. The Debtor believes that the injunction, indemnification and exculpation provisions are appropriate under case law and necessary to the case. In addition to releases of the Debtor, the Lender has agreed to release the Guarantors of any obligations, provided that Eli Wilner vacates the Property as provided in the Plan. Since the Lender has agreed to this release and no other Creditors' claims against the Guarantors, if any, are being released, it is not prohibited.

11

Under the Plan, there is no discharge of the Debtor given that the Plan is a liquidating Plan. The exculpations and indemnifications are extremely limited in nature, and extend only to acts in connection with the bankruptcy case and the Plan. The indemnification and injunction provisions are closely tailored, and are provisions that are typically approved through chapter 11 plans. The Debtor therefore believes that the release, exculpations, indemnifications and injunctions contained within the Plan are permissible under Section 1123(b)(6) of the Bankruptcy Code.

2. The Debtor Has Complied with the Applicable Provisions
of Title 11 (Section 1129(a)(2))

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent "complies with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). The primary purpose of section 1129(a)(2) is to ensure that the plan proponents have complied with the disclosure and solicitation requirements of sections 1125 and 1126. See H.R. Rep. 95-595, at 412 (1977); S. Rep. 95-989, at 126 (1978); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), aff'd, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636 (2d Cir. 1988); In *re Toy & Sports Warehouse, Inc.,* 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

On April 21, 2022, the Court entered the Approval Order, which approved (i) certain notice and solicitation procedures in connection with the Plan and (ii) the adequacy of the Disclosure Statement. The Debtor has filed affidavits of service indicating compliance with section 1125 of the Bankruptcy Code and the Approval Order with regard to the mailing and transmittal of the Solicitation Documents. As provided in the affidavit of service, the Solicitation Documents were sent to all applicable creditors and parties in interest of the Debtor, in compliance with sections 1125 and 1126 of the Bankruptcy Code and the Approval Order. The

Debtor has therefore established compliance with the requirements of section 1129(a)(2) of the Bankruptcy Code.

      3.    <u>The Plan Was Proposed in Good Faith (Section 1129(a)(3))</u>

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Debtor believes that this requirement is satisfied in this case. "Good faith" is not defined in the Bankruptcy Code, but a plan is considered to be proposed in good faith if there is a reasonable likelihood that the plan will lead to a result consistent with the standards and provisions set forth in the Bankruptcy Code. *See In re Leslie Fay Cos., Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y 1997) (citations omitted); *see also In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984. The standard for "good faith" is that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008) (quoting *Koelbl v. Glessing (In re Koelbl)*, 751 F.2d 137, 139 (2d Cir. 1984)) (internal quotation marks omitted); *In re Mid-State Raceway, Inc.*, No. 04-65746, 2006 WL 4050809, at *16 (Bankr. N.D.N.Y. Feb. 10, 2006) ("The 'good faith test' requires that the proposed plan 'bear some relationship to the statutory objective of resuscitating a financially-troubled corporation.'" (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988))).

When applying this standard, courts consider "the totality of the circumstances surrounding the establishment of a chapter 11 plan." *In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 261 (Bankr. S.D.N.Y. 2014) (quoting *In re Leslie Fay Companies, Inc.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997)) (internal quotation marks omitted); *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010). Thus, "[s]ection 1129(a)(3) speaks more to the process of plan development than to the content of the plan." *Chemtura Corp.*, 439 B.R. at 608 (citation and

internal quotation marks omitted); *In re Quigley Co., Inc.*, 437 B.R. 102, 125 (Bankr. S.D.N.Y. 2010).

To determine whether or not a plan has been proposed in good faith, a court should look at the totality of the circumstances regarding the development and proposal of the plan.  *Mabey v. Southwestern Electric Power Co. (In re Cajun Electric Power Co-op, Inc.)*, 150 F.3d 503, 519 (5th Cir. 1998; *In re Leslie Fay*, 207 B.R. at 781. The "good faith" standard is satisfied when "the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering that value to creditors." *Genco Shipping*, 513 B.R. at 261. ("Generally, a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code. The primary goal of chapter 11 is to promote the restructuring of the debtor's obligations so as to preserve the business and avoid liquidation." (internal quotation marks and citations omitted)).

A finding of absence of good faith generally requires "misconduct in bankruptcy proceedings, such as fraudulent misrepresentations or serious nondisclosures of material facts to the court." *In re River Vill. Assocs.,* 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995).

Here, there has been no misconduct in the proceedings, no fraudulent misrepresentations, no non-disclosure. All actions taken by the Debtor to date have been approved by the Court. Nothing has been without full disclosure. The Plan was negotiated with the Lender and accepted by the Lender. The Debtor has clearly demonstrated that it proposed the Plan with honesty and good intentions when viewed in light of the circumstances surrounding the plan development process.  Accordingly, the Plan has been proposed for the purpose of preserving the value of the bankruptcy estate, and delivering that value to creditors.

14

4.      The Plan Provides for Payment for Services and Expenses
        (Section 1129(a)(4))

Section 1129(a)(4) requires certain payments "for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case," to be approved by, or subject to approval of, the Court as reasonable. 11 U.S.C. § 1129(a)(4).  It is well established law that section 1129(a)(4) requires that professional fees paid by a debtor's estate are subject to review and approval by the court as reasonable.  *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992.  Also, fees and expenses payable under section 503(b) of the Bankruptcy Code can be allowed only after "notice and a hearing."  *See* 11 U.S.C §503(b).

Article III of the Plan sets forth the procedure by which the retained professionals must seek final allowance of compensation for their services rendered and reimbursement of their expenses incurred through the Confirmation Date.  As Article III provides, the retained professionals shall have thirty (30) days from the Confirmation Date to file their fee applications for allowance of fees and expenses incurred in the case, which fees and expenses are subject to review for reasonableness by the Court.  The requirements of section 1129(a)(4) are therefore satisfied.

5.      The Plan Provides for the Disclosure of the Service of Certain
        Individuals (Section 1129(a)(5))

Section 1129(a)(5) of the Bankruptcy Code requires the disclosure of the identity of certain individuals who will hold positions with the debtor or successors after confirmation of the Plan.  As set forth above, this section is not applicable.

6.      The Plan Does Not Provide for Rate Changes Subject to
        <u>Section 1129(a)(6)</u>

Section 1129(a)(6) of the Bankruptcy Code requires that, with respect to a debtor whose

rates are subject to governmental regulation following confirmation, appropriate governmental

approval has been obtained for any rate change provided for in the plan, or that such rate change

is expressly conditioned on such approval. 11 U.S.C. § 1129(a)(6).  This section is inapplicable

in this case.

7.      The Plan Satisfies The Best Interests of Creditors Test
        <u>(Section 1129(a)(7))</u>

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of

creditors. Specifically, section 1129(a)(7) provides that holders of impaired claims who vote to

reject the plan must

> receive or retain under the plan on account of such claim or interest
> property of a value, as of the effective date of the plan, that is not
> less than the amount that such holder would so receive or retain if
> the debtor were liquidated under chapter 7 [of the Bankruptcy
> Code] on such date.

11 U.S.C. § 1129(a)(7)(A)(ii).

The best interests of creditors test focuses on individual dissenting creditors belonging to

impaired classes. *See Bank of Am. Nat'l Trust & Sav. Ass'n* v. 203 *North LaSalle St. P.ship*, 526

U.S. 434, 441 n. 13 (1999); *Toy & Sports Warehouse,* 37 B.R. at 150. The analysis requires that

each non-accepting claimant or interest holder in classes that voted to reject the plan or that were

deemed to have rejected the plan receive as much under the plan as they would have if the debtor

were liquidated under chapter 7. *See In re Adelphia Commc'ns Corp., 368 B.R. 140, 251 (Bankr.*

*S.D.N.Y. 2007); see also 203 North LaSalle St. P'ship, 526 U.S. at 441 n.13; United States v.*

*Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 228 (1996); In re Best Prods. Co.,*

168 B.R. 35, 72 (Bankr. S.D.N.Y. 1994), *appeal dismissed,* 177 B.R. 791 (S.D.N.Y. 1995), *aff'd,*

68 F.3d 26 (2d Cir. 1995).  Accordingly, if each non-accepting member of an impaired class will receive at least as much under the plan as it would receive in a chapter 7 liquidation, the plan satisfies the best interests of creditors test. *See, e.g., Best Prods. Co.,* 168 B.R. at 72.

Here, all creditors are receiving at least what they would in a case under Chapter 7.  In Chapter 7, no creditor other than the Lender and Real Estate Taxes would receive a distribution since the amount to be received from a Sale of the Property is less than the amount of such Claims.  Through the Plan, the Lenders have carved out monies to which they are entitled to pay at least some distribution to Creditors. Additionally, in a Chapter 7 case, there would likely be additional costs attendant to a conversion to Chapter 7 and the administration of the estate by a Chapter 7 trustee and its professionals that are not otherwise present here.

As a result, each holder of a Claim has either accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  Accordingly, the Debtor believes that the "best interest test" of section 1129(a)(7) of the Bankruptcy Code is met in this case.

8.    Acceptance by All Impaired Classes (Section 1129(a)(8))

Section 1129(a)(8) of the Bankruptcy Code mandates that a plan must either provide for the non-impairment of claims or be accepted by all impaired classes. 11 U.S.C. § 1129(a)(8). Section 1129(b) of the Bankruptcy Code provides an exception to this requirement, allowing confirmation of a plan as long as at least one impaired class of claims has accepted it and the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted the plan.

Here, because Class 1 (Priority Non-Tax Claims) and Class 4 (General Unsecured Claims) are deemed to have rejected the Plan, the Debtor is seeking confirmation of the Plan

17

with respect to those Classes in accordance with the cram-down provisions of Section 1129(b) of the Bankruptcy Code, as further discussed below.

        9.     <u>Treatment of Priority Claims (Section 1129(a)(9))</u>

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding claims entitled to priority under section 507(a) of the Bankruptcy Code receive specified payments under the plan. The Plan here meets the requirements of all relevant subsections of section 1129(a)(9). In accordance with section 1129(a)(9)(A) of the Bankruptcy Code, the Plan provides that, except to the extent that the Debtor and holders of Allowed, Administrative and Professional Fee Claims agree to less favorable treatment (which is the case as to Professional Fees), holders of such Claims shall receive full payment of their Claims in cash upon the later of as soon as practicable following the Effective Date of the Plan or the allowance of said Claims.

Likewise, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, the Plan provides that each holder of an Allowed Priority Tax Claim shall also be entitled to receive full payment of their Claims in cash upon the later of as soon as practicable following the Effective Date or the allowance of said Claims except to the extent that the Debtor and holders of such Claims agree otherwise. Here, Priority Tax Claims if any, will be paid in full on the Effective Date or upon allowance of such Claims.

        10.    <u>Acceptance of at Least One Impaired Class (Section 1129(a)(10))</u>

If a plan has any impaired class of claims, section 1129(a)(10) of the Bankruptcy Code requires that at least one such impaired class of claims vote to accept the plan, "determined without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). This requirement is satisfied because Class 2, the Lender, which is impaired under the Plan, has accepted the Plan.

11.    The Plan is Feasible (Section 1129(a)(11))

Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine whether a plan is feasible as a condition precedent to confirmation. Specifically, the Court must determine that

> [c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). As demonstrated below, the Plan is feasible within the meaning of this provision.

The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether a plan is workable, has a reasonable likelihood of success and is not likely to be followed by liquidation or another reorganization. *See In re Leslie Fay Cos.,* 207 B.R. 764, 788-89 (Bankr. S.D.N.Y. 1997); *Johns-Manville*, 843 F.2d at 649. This provision requires only a probability of success, not a guarantee of success. *See Johns-Manville*, 843 F.2d at 649; *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II),* 994 F.2d 1160, 1166 (5th Cir. 1993) ("Only a reasonable assurance of commercial vitality is required." (quoting *In re Lakeside Global II, Ltd.,* 116 B.R. 499, 507 (Bank. S.D. Tex. 1989)); *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.),* 755 F.2d 1336, 1341 (8th Cir. 1985) ("Success need not be guaranteed."); *see also In re Eddington Thread Mfg. Co.,* 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995) ("[T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement."). A key element of feasibility is whether there exists the reasonable probability that the provisions of the plan can be performed.  *See Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).

Although this requirement is not technically necessary in this case because the Plan is a liquidating plan, the Plan must nevertheless be feasible in what it proposes to do. In this regard, the Sale will occur imminently, at which time the distributions to Creditors will be made. Accordingly, the Debtor believes that section 1129(a)(11) is satisfied in this case.

12.    <u>The Plan Provides for Payment of Certain Fees (Section 1129(a)(12))</u>

Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. §1930 be paid or that provision be made for their payment under such plan. 11 U.S.C. § 1129(a)(12). The Plan provides that such fees will be paid in full by the Debtor through the entry of a Final Decree closing the Chapter 11 Case. Thus, section 1129(a)(12) of the Bankruptcy Code is satisfied.

13.    <u>The Plan Does Not Need To Provide for Continuation of Retiree Benefits (Section 1129(a)(13))</u>

Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of certain retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated itself to provide such benefits. 11 U.S.C. § 1129(a)(13). The Debtor does not pay retiree benefits and the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable.

14.    <u>The Provisions of The Provisions of Sections 1129(a)(14), (15) and (16) are Inapplicable in This Case</u>

Since the Debtor is not an individual, nor is the Debtor a not-for-profit entity, the provisions of section 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code are not applicable in this case.

22373.2000 20323113v2

15.     The Provisions of Sections 1129(a)(1) Through 1129(a)(16), Other Than
        1129(a)(8) Have Been Satisfied.  The Plan May Be Confirmed Notwithstanding
        the Failure to Satisfy Section 1129(a)(8) of the Bankruptcy Code

As demonstrated above, the requirements of sections 1129(a)(1) through 1129(a)(16) of

the Bankruptcy Code have been satisfied, other than section 1129(a)(8) of the Bankruptcy Code

since two (2) Classes did not vote and are therefore deemed to have rejected the Plan.  As set

forth below, the Plan may nevertheless be confirmed under section 1129(b) of the Bankruptcy

Code.

B.     **Section 1129(b) Requirements**

Section 1129(b) of the Bankruptcy Code provides a mechanism, commonly known as the

"cram down," whereby a court may confirm a plan when all impaired classes do not accept the

plan.   A plan may be confirmed under section 1129(b) without each class's affirmative

acceptance of the plan if "the plan does not discriminate unfairly, and is fair and equitable, with

respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

11 U.S.C. § 1129(b)(1). To be confirmed, therefore, the Plan must be "fair and equitable" and

must "not discriminate unfairly" with respect to Classes 1 and 4 (all other Classes have either

voted to accept, or are deemed to accept, the Plan).  The Plan clearly satisfies both of these

requirements as to the rejecting Class.

1.     The Plan Does Not Discriminate Unfairly With Respect To
       The Deemed Rejecting Classes

Section 1129(b)(1) of the Bankruptcy Code does not prohibit all discrimination between

classes, but only discrimination that is unfair. See *In re 11,111, Inc.,* 117 B.R. 471, 478 (Bankr.

D. Minn. 1990); cf. *In re Rochem, Ltd.,* 58 B.R. 641, 643 (Bankr. D.N.J. 1985) (question of

"unfair" treatment concerns whether there is a reasonable basis for discrimination between

classes). Although Congress did not define "discriminate unfairly," courts have held that a

dissenting class must "receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp.,* 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986*), aff'd in part, rev'd on other grounds,* 78 B.R. 407 (S.D.N.Y. 1987), *aff'd,* 843 F.2d 636 (2d Cir. 1988) As long as there is a reasonable basis for disparate treatment, taking into account the particular facts and circumstances of the case, a plan does not discriminate unfairly. *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *Johns-Manville Corp.,* 68 B.R. at 636. Thus, this requirement prevents a plan's proponents from segregating similar claims or groups of claims into separate classes and providing disparate treatment for those classes unless they can provide a reasonable basis for doing so.

Under the Plan, each of the Classes deemed to reject the Plan are dissimilar to the others, and the Plan's segregation of such Classes has a rational basis.  Class 1 consists solely of Priority Non-Tax Claims and such Claims are not included in any other Class.  Class 4 consists solely of General Unsecured Claims and no such Claims are included in any other Class.  Accordingly, the Plan does not discriminate unfairly against the deemed rejecting Classes, thereby satisfying the first prong of section 1129(b)(1).

> 2.    The Plan is Fair and Equitable With Respect To The
> Deemed Rejecting Classes

In addition to not discriminating unfairly, section 1129(b)(1) of the Bankruptcy Code requires a plan to be fair and equitable with respect to rejecting classes. See 11 U.S.C. § 1129(b)(2) (defining the meaning of "fair and equitable").

First, there are no Class 1 Claims.  The Debtor was a non-operating entity and no such claims were filed by the Bar Date.  As to Class 4 General Unsecured Claims, section 1129(b)(2)(B) requires that a plan satisfy one of the following conditions:

(i)     the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)    the holder of any claim that is junior to the claims of such class will not receive or retain under the plan on account of such junior interest any claim.

11 U.S.C. § 1129(b)(2)(B).

Here, the Plan satisfies section 1129(b)(2)(B), since Class 5 (the only Class junior to General Unsecured Claims) will not receive any payment under the Plan unless and until Claims in Classes 1 through 4 are paid in full. The Debtor therefore believes that the Plan is confirmable under 11 U.S.C. § 1129(b).

## III.    **CONCLUSION**

Based upon the foregoing, the Debtor respectfully submits that the Plan complies with and satisfies all of the requirements of section 1129 of the Bankruptcy Code, and that the Court should confirm the Plan and grant the Debtor such other and further relief as is just and proper.

Dated:   Garden City, New York
       August 2, 2022

CULLEN AND DYKMAN LLP
Attorneys for the Debtor


By:   /s/ Bonnie L. Pollack
Matthew G. Roseman, Esq.
Bonnie L. Pollack, Esq.
Michael Traison, Esq.
100 Quentin Roosevelt Boulevard
Garden City, New York, 11530
(516) 357-3700